William E. TWYMAN, Appellant,

v.

Sheila Kay TWYMAN, Appellee.

No. 3–88–095–CV.

Court of Appeals of Texas,
Austin.

May 23, 1990.

Rehearing Overruled June 27, 1990.

Robert Penn Fowler, Fowler & Fowler, Austin, for appellant.

Edwin J. (Ted) Terry, Jr., James W. Larue, Austin, for appellee.

Before POWERS, GAMMAGE and ABOUSSIE, JJ.

GAMMAGE, Justice.

William Earl Twyman appeals from a $15,000 district court judgment in favor of Sheila Kay Twyman for negligent infliction of emotional distress. We will affirm the judgment of the district court.

Sheila and William Twyman were married in 1969. Sheila filed suit for divorce in

1985, but did not proceed with the suit until July 9, 1987, when she amended her petition to include the claim against William for negligent infliction of emotional distress. After a bench trial, the court rendered judgment dissolving the marriage, dividing the marital estate, awarding conservatorship of the children, ordering child support, and awarding Sheila $15,000 plus interest for her tort claim. William appeals only from the judgment for the tort claim.

In her amended original petition, Sheila alleged William had "intentionally and cruelly attempted to have [her] engage in deviant sexual acts with [him]" and such conduct proximately caused her emotional harm and mental anguish. She testified that William first introduced bondage activities into their sexual relations approximately five years after they were married. After that experience she told him for the first time she had been forcibly raped at knife-point before their marriage and she could not "handle" engaging in bondage activities. Approximately ten years later Sheila discovered William was having sexual relations with another woman. At that time he said to Sheila, "If you could have just done bondage, nothing else would have mattered." Sheila sought help from a psychologist William was seeing, and, at a joint session, William said he would try to save their marriage and discontinue seeing the other woman. Sheila later discovered William was still calling the woman. Soon thereafter, their ten-year-old son discovered magazines William had hidden away in their house which depicted sexual bondage activities. Seeing the magazines, Sheila realized bondage involved more than she had imagined and she experienced "utter despair." She consulted another therapist.

Throughout this time, William repeatedly indicated to Sheila that there was something wrong with her for not engaging in the activities; told her that when he was out of town he visited stores selling bondage paraphernalia and that "women in their mink coats and men in their three-piece business suits purchased these items"; told her he visited "sex parlors" and that there had been other women be-sides his current girlfriend; described his sexual activities with his girlfriend and made derogatory comparisons of Sheila's sexual abilities with those of his girlfriend; and told Sheila they would have a marriage if she could do bondage—that he could not see a future for them if she did not.

Sheila testified that during this time she felt utter despair and devastation and believed she was losing her marriage because of her inability to participate in these activities. She lost 30 pounds and saw three different counselors. Under this pressure and upon the advice of one of her counselors, Sheila again attempted to engage in bondage activities with William. Their last encounter, however, was so rough that Sheila sustained bleeding for four days and was treated by a gynecologist who tested her for venereal disease. She testified the activity was so painful and humiliating that she knew she could not continue to attempt it, and that she feared exposure to AIDS and other venereal diseases.

William brings five points of error. Under point two, he argues the trial court erred in applying the concept of continuing tort to these facts, thereby preventing the running of the statute of limitations.

Texas courts first recognized the tolling concept of continuing tort in trespass to land and nuisance cases. *Creswell Ranch & Cattle Co. v. Scoggins*, 39 S.W. 612 (Tex.Civ.App.1897, no writ). In an early case, this Court recognized that a wife's cruel treatment of her husband could be so continuous in nature so as to avoid the limitations period in divorce. *Franzetti v. Franzetti*, 120 S.W.2d 123 (Tex.Civ.App. 1938, no writ). The tolling concept has since been expanded to false imprisonment cases. *Adler v. Beverly Hills Hosp.*, 594 S.W.2d 153 (Tex.Civ.App.1980, no writ). It has also been considered in cases involving civil rights violations. *Arquette v. Hancock*, 656 S.W.2d 627 (Tex.App.1983, writ ref'd n.r.e.).

Neither party cites authority applying continuing tort to negligent infliction of emotional distress, and we find no Texas cases involving this issue. One federal

court concluded that when a pleading alleges that intentional infliction of emotional distress continued up to the present, the allegation overcomes the statute of limitations defense raised in a motion to dismiss. *Linker v. Custom–Bilt Mach. Inc.*, 594 F.Supp. 894 (D.Pa.1984). A Georgia court left open the possibility, without deciding, that intentional infliction of mental distress is of a continuing nature. *Adams v. Emory Univ. Clinic*, 347 S.E.2d 670 (Ga.Ct. App.1986).

A continuing tort is "one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action." 54 C.J.S. *Limitations of Actions* § 177, at 231 (1987). This case does not involve acts that are "complete in themselves," *Franzetti*, 120 S.W.2d at 126, but involves a continuing course of conduct which over a period of years caused injury. "Since usually no single incident in a continuous chain of tortious activity can 'fairly or realistically be identified as the cause of significant harm,' it seems proper to regard the cumulative effect of the conduct as actionable." *Page v. United States*, 729 F.2d 818, 821–822 (D.C.Cir.1984).

▮ The trial court found William "engaged in a continuing course of conduct of attempting to coerce [Sheila] to join in his practices of 'bondage' by continually asserting that [their] marriage could be saved only by [Sheila] participating with [William] in his practice of 'bondage.' " We conclude the court did not err in applying the tolling concept of continuing tort to these facts. William's second point of error is overruled.

In his first point of error, William argues "the trial court erred when it found that Respondent engaged in a 'continuing course of conduct and attempted emotional coercion' because there is no evidence to support a finding of any 'continual course of conduct' occurring after July 9, 1985." He does not assert legal insufficiency, but concludes without citation of authority that an act revealed in the record which occurred after that date "does not a continuing course of conduct make." Any acts

occurring after July 9, 1985, were significant, however, in determining whether the statute of limitations had run (an issue which William does not raise in this point of error), not in determining whether his acts are properly termed a "continual course of conduct." Point of error one is overruled.

▮ In his third point of error, William complains the trial court erred in assessing damages for acts that occurred more than two years before commencement of the tort action because recovery for these acts was barred by the two-year statute of limitations. Sheila filed her amended petition July 9, 1987. William argues that recovery for any acts occurring before July 9, 1985, is barred. This would be true in the "usual personal injury case [in which] the defendant's wrongful conduct ceases on a certain day insofar as it may be considered a cause of the injury in question." *Adler*, 594 S.W.2d at 155. But in a continuing tort case, the cause of action is not complete and does not accrue until the tortious acts have ceased. *Id.* at 156; C.J.S. *supra*, at 231. The court found that William's "continuing course of conduct and attempted emotional coercion existed prior to July 9, 1985, and after July 9, 1985." The evidence supports this finding. As William admits in his brief, the record reveals the conduct complained of continued at least through the fall of 1985, when he told Sheila that they would have a marriage if she could do bondage—that he could not see a future for them if she did not. The cause of action, consequently, did not accrue until *after* July 9, 1985, and recovery is not barred. Point of error three is overruled.

William's fourth point of error is multifarious. He appears to make a legal insufficiency argument regarding the trial court's finding that bondage is a deviant sexual act, claiming there is no evidence supporting that fact. His argument, however, also complains of the factual sufficiency of the evidence supporting a finding of mental anguish. Following *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986), we will address both arguments.

William did not include his "no evidence" contention in his motion for new trial, and that part of his point of error is not preserved and cannot be raised on appeal. *Salinas v. Fort Worth Cab & Baggage Co.*, 725 S.W.2d 701, 704–705 (Tex.1987).

In reviewing an insufficiency of the evidence contention, we must consider all of the evidence in the record to determine whether the findings are so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951). It is for the trier of fact to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. This Court may not substitute its judgment for that of the fact finder if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 289 (Tex.App.1984, writ ref'd n.r.e.).

William complains the evidence was insufficient to establish that Sheila's emotional response rose to the level of mental anguish necessary to prove a negligent infliction of emotional distress claim. In order to recover for negligent infliction of emotional distress, a complainant must show "the tortfeasor acted knowingly or with conscious indifference, causing a relatively high degree of mental pain and distress, such as a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, or public humiliation." *Underwriters Life Ins. Co. v. Cobb*, 746 S.W.2d 810, 819 (Tex.App. 1988, no writ).

■ Viewing the evidence as a whole, we cannot say the evidence is insufficient to support the trial court's finding of mental anguish, or that it shocks the conscience or clearly demonstrates bias. *Pool*, 715 S.W.2d at 635. The record demonstrates that although William knew of Sheila's previous violent rape and her inability to emotionally "handle" participation in sexual bondage activities, he repeatedly conditioned the continuance of their marriage upon such activities, participated in sexual bondage activities with extramarital partners, cruelly described such partners and experiences to her, pressured her to engage in conduct she found distasteful, derogatorily compared her sexual abilities with the other partners, and exposed their ten-year-old son to graphic depictions of sexual bondage acts. Sheila testified she experienced utter despair, devastation, and humiliation; lost 30 pounds; sought treatment from three counselors; sustained physical injury; sought treatment from a physician; and feared exposure to AIDS and other venereal diseases. We conclude this evidence, if believed, is sufficient to sustain the trial court's finding of mental anguish. Point of error four is overruled.

■ In his fifth point of error, William complains that "the trial court erred in granting a tort judgment because there is no evidence that respondent breached any duty owed to petitioner that was the proximate cause of any mental anguish suffered by petitioner." Although this appears to be a no evidence point as to the duty, breach of duty, and proximate cause elements of a negligence cause of action, it is not supported by any argument concerning sufficiency of the evidence. Instead the argument concerns a question of public policy—whether interspousal immunity should bar joinder of negligent tort causes of action, such as infliction of emotional distress, with suits for divorce. Following the rule that "we look not only at the wording of the points of error, but to the argument under each point to determine as best we can the intent of the party," *Pool*, 715 S.W.2d at 633 (quoting *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982)), we address the issue supported by argument.

William argues that by allowing negligent tort causes of action to be brought in divorce proceedings, divorces will become unnecessarily embittered, traumatic, and expensive. We note the Fourteenth Court of Appeals in Houston recently held that interspousal immunity bars a separate cause of action for intentional infliction of

emotional distress in divorce suits. *Chiles v. Chiles*, 779 S.W.2d 127 (Tex.App.1989, writ requested). We decline to follow that holding, however, and conclude the issue was firmly settled in *Price v. Price*, 732 S.W.2d 316 (Tex.1987).

William in his brief and the court in *Chiles* argue that *Price* is distinguishable because it did not involve a divorce proceeding. In *Price*, the Supreme Court recounted—and discounted—the historical bases for the doctrine of interspousal immunity, noting that adoption of the Married Women Acts eliminated the fiction that legal existence of the wife during marriage was merged into that of her husband. *Price*, 732 S.W.2d at 316–317. Arguments of marital harmony and the potential for collusive lawsuits provide no support for resurrecting interspousal immunity in tort actions in divorce proceedings. Marital harmony has already been destroyed and the real-party-in-interest adversarial positions occupied by the respective spouses preclude collusion.

William argues that stronger reasons exist for barring claims based on a negligent act than one based on an intentional act in divorce proceedings. But *Price* involved a negligent tort, and as the Supreme Court pointed out: "[T]he arguments in favor of interspousal immunity are generally equally applicable [to both intentional and negligent torts], and lacking, as to both." *Id.* at 318.

William further argues that *Price* is distinguishable because it involved a wife attempting to recover damages from her husband's insurance company for personal injuries caused by his negligence in a traffic accident, whereas the present case involves a negligent infliction of emotional distress claim brought in a divorce proceeding. In *Stafford v. Stafford*, 726 S.W.2d 14 (Tex. 1987), the Supreme Court allowed a woman to recover on a personal injury counterclaim in a divorce proceeding for transmittal of a venereal disease. Although the issue of interspousal immunity was not before the Court in *Stafford*, in *Price* the Supreme Court stated, "To leave in place a bar to suits like that of Mrs. Stafford or other suits involving non-vehicular torts would amount to a repudiation of the constitutional guarantee of equal protection of the laws." *Price*, 732 S.W.2d at 320.

Finally, to dispel any doubt regarding the abolition of interspousal immunity, the Court concluded: "The doctrine of interspousal immunity has previously been abrogated as to some causes of action in this jurisdiction. We now abolish that doctrine *completely* as to *any* cause of action." *Id.* at 319 (emphasis added).

In *Chiles* the Court of Appeals argued the issue of interspousal immunity had not been preserved for review in *Price:*

> [I]n *Price v. Price*, 732 S.W.2d 316 (Tex. 1987), the supreme court abolished interspousal tort immunity and stated that they abolished interspousal immunity as to *any* cause of action.... The court candidly admitted, however, that the *issue* of interspousal immunity had not been preserved for their review.

*Chiles*, 779 S.W.2d at 131.

This is an erroneous reading of *Price*. In the cited passage, the Supreme Court merely stated that the issue of interspousal immunity had not been preserved for review in the *Stafford* case. *Price*, 732 S.W.2d at 319–320. The issue was clearly before the Court in *Price*. Following the Supreme Court's holding in *Price* that the antiquated concept of interspousal immunity has been completely abolished as to *any* cause of action in this State, we overrule William's fifth point of error.

The judgment is affirmed.