**Ian FLOCKHART and Sandra Flockhart, Plaintiffs and Appellees,**

v.

**Sharon WYANT, Defendant and Appellant.**

No. 16971.

Supreme Court of South Dakota.

Argued Nov. 26, 1990.

Decided March 13, 1991.

Gregory A. Eiesland and Leah J. Fjerstad of Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, for plaintiffs and appellees.

Benjamin J. Eicher of Wallahan & Eicher, Rapid City, for defendant and appellant.

MILLER, Chief Justice.

This is an appeal by defendant from a punitive damage award entered in a bifurcated jury trial. In the compensatory damage phase, the jury returned a verdict in favor of plaintiff Ian Flockhart in the amount of $15,156.70. A separate punitive damage trial was held to the same jury which awarded Flockhart punitive damages in the amount of $30,000.00. Also appealed is an order denying defendant's motion for judgment n.o.v. and/or motion for a new trial, and defendant's motion for remittitur. We affirm.

## FACTS

On January 8, 1988, at approximately 2:00 p.m., an accident occurred between Sharon Wyant and Flockhart. It took place just east of Rapid City, South Dakota, on Interstate 90. Flockhart was travelling eastbound, Wyant westbound. Wyant lost control of her vehicle and went through the median striking Flockhart's pickup truck.

Wyant began drinking at about 8:00 p.m. January 7. (She admitted to drinking a six-pack of beer.) The next morning (the day of the accident) Wyant, although she knew she would be traveling to Rapid City, had "two or three" beers at a bar in her hometown of Wall (approximately fifty miles east of Rapid City) between 10:00 a.m. and 11:00 a.m. She then began her trip towards Rapid City, during which she consumed more beer. Next, she stopped and drank at a bar in New Underwood (approximately thirty-five miles west of Wall and fifteen miles east of Rapid City). She then proceeded toward Rapid City where the accident occurred. She had beer in her car at the time of the accident.

Wyant, who was convicted of driving under the influence of alcohol as a result of this accident,[1] testified that she had only consumed about six beers that day. However, her blood alcohol level was 0.30%.

Wyant, who apparently had *five* previous alcohol-related offenses, dating back to 1972, had been through various alcohol treatment programs. She testified that she has seen movies, attended classes, and had been to lectures about drinking and driving. Wyant had been fined for each of her prior DUI convictions but testified that the fines had not kept her from drinking, nor had they kept her from driving while she had been drinking. Wyant testified that she no longer drives nor does she want a driver's license (she states that she would not drive without a driver's license).

## ISSUE I

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN INSTRUCTING THE JURY THAT THEY COULD AWARD PUNITIVE DAM-

---

1. Wyant went to the alcohol recovery center in Rapid City for thirty days and also spent five days in jail.

AGES BASED ON A PREPONDERANCE OF THE EVIDENCE RATHER THAN BY A CLEAR AND CONVINCING STANDARD.

As stated previously, this was a bifurcated trial. During the punitive damages portion of the trial, the court instructed the jury that plaintiff (Flockhart) had the burden of proving the elements for punitive damages by a preponderance of the evidence.

Wyant objected to the giving of a jury instruction setting forth a "preponderance" of the evidence standard and instead proposed an instruction setting forth a "clear and convincing" evidence standard, which the trial court rejected. Wyant argues on appeal that the "clear and convincing" evidence standard must be applied in punitive damages cases, asserting that this requirement stems from any or all of the following grounds: the legislative language expressed or implied by the provisions of SDCL 21-1-4.1; federal and/or state constitutional due process protection; and public policy. These contentions will be addressed seriatim.

A. *SDCL 21-1-4.1.*

■ In 1986 the South Dakota Legislature enacted SDCL 21-1-4.1, which provides:

In any claim alleging punitive or exemplary damages, before any discovery relating thereto may be commenced and before such claim may be submitted to the finder of fact, the court shall find, *after a hearing and based upon clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct* on the part of the party claimed against. (Emphasis supplied.)

Wyant argues that, by implication, the provisions of SDCL 21-1-4.1 require that the jury use a clear and convincing evidence standard for its determination of punitive damages. Flockhart asserts that the statute makes no such requirement directly or impliedly. Flockhart argues that if the

legislature had intended a different burden of proof for punitive damages, it would have said so. Wyant responds to that argument, asserting that since the legislature has chosen to treat the evidentiary standard by requiring a prima facie case for punitive damages different than that for other torts, the same rationale should govern the standard of proof which must be applied by the jury in reaching its verdict. They allege that it would make no sense for a trial court to apply the clear and convincing evidence standard in deciding whether the jury should even be permitted to determine punitive damages, and then turn around and allow the jury to apply a lesser standard in making such determination. We disagree.

SDCL 21-1-4.1 requires the trial court to apply a clear and convincing evidence standard to determine, before any such claim may be submitted to discovery or to the jury, whether there is a *reasonable basis* to believe there has been a willful, wanton or malicious conduct on the part of the party claimed against. That does *not* establish a clear and convincing evidence standard but merely requires clear and convincing evidence to show a *reasonable* basis. The clear and convincing language merely modifies the "reasonable basis" language to make a prima facie showing that punitive damages *may* be in order.

B. *Federal or state constitutional due process protection.*

Wyant next argues that the due process clause contained in the state constitution [2] or the United States Constitution, amend. XIV, § 1, applies to punitive damage claims by virtue of their "penal nature." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

Wyant then asserts that in order to bring punitive damage procedures in compliance with due process protection, the proof of each element of a punitive damages claim must be made by clear and convincing evidence rather than by a mere preponderance

2. Article VI, § 2 of the South Dakota Constitution provides, in pertinent part:

No person shall be deprived of life, liberty or property without due process of law.

of the evidence. Wyant cites Wheeler, *The Constitutional Case for Reforming Punitive Damages Procedures*, 69 Va.L.Rev. 269 (1983), for this proposition.

Wyant observes that Justices O'Connor and Scalia of the United States Supreme Court have noted that the jury's unbridled discretion in determining punitive damage liability "may violate the Due Process Clause." *Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 87, 108 S.Ct. 1645, 1655, 100 L.Ed.2d 62, 78 (1988) (O'Connor, J., concurring). Those Justices asserted that Mississippi's standardless grant of discretion to the jury may be inconsistent with due process. 486 U.S. at 88, 108 S.Ct. at 1656, 100 L.Ed.2d at 78. However, as noted in the discussion in Issue III, South Dakota does have standards in determining the amount of damages a jury can award.[3]

█ Due process does not require the same procedural safeguards for all types of proceedings or for all deprivations of property. Instead, the required procedures can vary according to the specific factual context. *See generally Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.' *In re Winship*, 397 U.S. 358, 370 [90 S.Ct. 1068, 1075, 25 L.Ed.2d 368] (1970) (Harlan, J., concurring). The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

Generally speaking, the evolution of this area of the law has produced across a continuum three standards or levels of proof for different types of cases. At one end of the spectrum is the typical civil case involving a monetary dispute between private parties. Since society has a minimal concern with the outcome of such private suits, plaintiff's burden of proof is a mere preponderance of the evidence. The litigants thus share the risk of error in roughly equal fashion.

In a criminal case, on the other hand, the interests of the defendant are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment. In the administration of criminal justice, our society imposes almost the entire risk of error upon itself. This is accomplished by requiring under the Due Process Clause that the state prove the guilt of an accused beyond a reasonable doubt. *In re Winship, supra.*

The intermediate standard, which usually employs some combination of the words 'clear,' 'cogent,' 'unequivocal' and 'convincing,' is less commonly used, but nonetheless 'is no stranger to the civil law.' *Woodby v. INS*, 385 U.S. 276, 285 [87 S.Ct. 483, 487, 17 L.Ed.2d 362] (1966). See also C. McCormick, Evidence § 320 (1954); 9 J. Wigmore, Evidence § 2498 (3d ed. 1940). *One typical use of the standard is in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant. The interests at stake in those cases are deemed to be more substantial than mere loss of money* and some jurisdictions accordingly reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof. Similarly, this Court has used the 'clear, unequivocal and convincing' standard of proof to protect particularly important individual interests in various civil cases. See, *e.g., Woodby v. INS, supra*, at 285 [87 S.Ct. at 487] (deportation); *Chaunt v. United States*, 364 U.S. 350, 353 [81 S.Ct. 147, 149, 5 L.Ed.2d 120] (1960) (denaturalization); *Schneiderman v. United*

---

**3.** It should be noted that the United States Supreme Court has held that the Eighth Amendment to the United States Constitution does not apply to punitive damages in cases between private parties. *See Browning–Ferris Industries v. Kelco Disposal, Inc.*, 492 U.S. 257, ——, 109 S.Ct. 2909, 2912, 106 L.Ed.2d 219, 228 (1989).

*States,* 320 U.S. 118, 125, 159 [63 S.Ct. 1333, 1336, 1353, 87 L.Ed. 1796] (1943) (denaturalization). (Emphasis added.)

*Addington v. Texas,* 441 U.S. 418, 423–24, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323, 329–30 (1979) (footnotes omitted).

■ We agree with Flockhart that Wyant's due process rights are protected by the trial court's determination (both before discovery is allowed and before the matter goes to the jury) that plaintiff has established a prima facie case that defendant's conduct has been willful, wanton, or malicious.[4] We decline to require a clear and convincing evidence trial standard based on the due process clause contained in the United States or South Dakota Constitutions.[5]

### C. *Public Policy.*

■ Wyant next argues that public policy demands that a clear and convincing evidence standard be applied in this case. She asserts that punitive damages are onerous, they stigmatize the defendant, and, finally, that they have serious social consequences which require the imposition of the higher standard of proof. *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 723 P.2d 675 (1986); *Travelers Indem. Co. v. Armstrong,* 442 N.E.2d 349 (Ind.1982); *Tuttle v. Raymond,* 494 A.2d 1353 (Me. 1985); *Wangen v. Ford Motor Co.,* 97 Wis.2d 260, 294 N.W.2d 437 (1980).

We disagree. In the typical civil dispute over money damages, the burden of proof is generally the "preponderance of the evidence" standard. *Addington,* 441 U.S. at 423, 99 S.Ct. at 1808, 60 L.Ed.2d at 329. "The few exceptions are very limited and include only those cases involving fraud[6] or possible loss of individual liberty, citizenship, or parental rights." *United States v.*

*F/V Repulse,* 688 F.2d 1283, 1284 (1982) (citations omitted).

Here, the penalty Wyant faces is only the loss of money. The interest at stake where a higher standard of review constitutionally applies are cases where the interest implicated is deemed more substantial than the mere loss of money. *Addington, supra; F/V Repulse, supra.*

Furthermore, as stated previously in the discussion of SDCL 21–1–4.1, the public policy of the State of South Dakota, as expressed in that legislative enactment, is that public policy *does not* require the enhanced burden of proof. Therefore, we hold that these policy reasons do not require a clear and convincing evidence standard of proof when a claim is submitted to the jury for punitive damages.

### ISSUE II

WHETHER THERE WAS SUFFICIENT EVIDENCE TO ESTABLISH THAT WYANT WAS GUILTY OF OPPRESSION, FRAUD, MALICE, OR THE WANTON OR RECKLESS DISREGARD OF FLOCKHART'S RIGHTS.

Wyant alleges that there has been no proof of purposeful or intentional conduct with regard to the operation of a motor vehicle, but rather that there is merely proof of drinking and driving and that this is insufficient evidence on which to base punitive damage liability.

■ Flockhart responds, arguing that Wyant willfully, wantonly, and with reckless disregard for the rights and safety of other motorists, drove her vehicle while she had a blood alcohol content of 0.30%. (That is three times the level at which a person is presumed to be under the influence of alcohol in this state. *See* SDCL 32–23–7.) He alleges that these facts combined with

4. In *Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 906 F.2d 1206, 1228 (8th Cir.1990), the Eighth Circuit Court of Appeals held that our "punitive damages scheme, with its explicit standards and its judicial review of jury awards, sufficiently constrains the jury's discretion and satisfies the dictates of due process."

5. In a similar vein, the United States Supreme Court upheld a punitive damages award when it

was challenged as violative of due process in *Pacific Mutual Life Ins. Co. v. Haslip,* — U.S. ——, 111 S.Ct. 1032, 112 L.Ed.2d 1172 (1991).

6. In fact, in South Dakota, only a preponderance of the evidence is required to prove fraud. *Aschoff v. Mobil Oil Corp.,* 261 N.W.2d 120 (S.D. 1977).

Wyant's prior convictions for alcohol related offenses, and that she had previously been through in-patient alcohol treatment, coupled with the instruction and warning she had received in drunk driver classes, combined with the numerous warnings that defendant was given about the danger she placed other motorists in by drinking and driving is just the type of conduct which justifies the imposition of punitive damages. We agree.

Flockhart asserts that Wyant consumed alcohol sufficient to raise her blood alcohol content to 0.30%, knowing full well that she would be driving fifty miles from Wall to Rapid City, and that this evidenced a conscious disregard for the rights of all motorists on our highways. We agree.

▪ Punitive damages are recoverable in South Dakota in cases involving willful and wanton misconduct that indicates a reckless disregard for one's rights. *Hannahs v. Noah*, 83 S.D. 296, 158 N.W.2d 678 (1968). In *Tranby v. Brodock*, 348 N.W.2d 458, 461 (S.D.1984), this court in discussing willful and wanton misconduct stated:

> It is conduct which partakes to some appreciable extent, though not entirely, of the nature of a deliberate and intentional wrong. There must be facts that would show that defendant intentionally did something in the operation of the motor vehicle which he should not have done or intentionally failed to do something which he should have done under the circumstances that it can be said that he consciously realized that his conduct would *in all probability, as distinguished from possibility,* produce the precise result which it did produce and would bring harm to the plaintiff. Willful and wanton misconduct demonstrates an affirmative, reckless state of mind or deliberate recklessness on the part of the

defendant. Such state of mind is determined by an objective standard rather than the subjective state of mind of the defendant. (Citations omitted.) (Emphasis added.)

"In resolving sufficiency of the evidence issues on appeal, this court examines the record to determine only if there is competent and substantial evidence to support the verdict. We resolve all conflicts and draw all reasonable inferences therefrom in favor of the verdict." *Hoffman v. Louis Dreyfus Corp.*, 435 N.W.2d 211, 213 (S.D. 1989) (citations omitted). "Likewise, it is not the function of this court on review to weigh conflicting evidence or to pass upon credibility of witnesses; that task lies within the province of the jury." *Sharkey v. Washington Nat'l. Ins. Co.*, 373 N.W.2d 421, 427 (S.D.1985) (citations omitted).

Wyant is an admitted alcoholic with a long history of involvement with the law concerning alcohol related offenses. On the day in question, she drank for hours (including while she was operating her car). She knew that her ultimate destination was some fifty miles away, yet she consciously chose to drink anyway. She had been through drunk-driving classes, and in-patient alcoholic treatment programs. She must have known, with substantial certainty, the danger which her conduct engendered. There was ample evidence to establish Wyant's conduct was willful, wanton, and in reckless disregard of Flockhart's rights (and that of every other motorist driving on I-90 that day).[7]

## ISSUE III

### WHETHER THE PUNITIVE DAMAGE AWARD WAS EXCESSIVE.

Wyant argues that the size of the punitive damage award was in disregard of the

---

**7.** This case is distinguishable from *Bethel v. Janis*, 597 F.Supp. 56 (D.S.D.1984), wherein the Court did not allow punitive damages to be awarded when defendant was intoxicated at the time of the accident. There, defendant pleaded guilty to involuntary manslaughter for the death of Hurst, who died as a result of a two-car head-on collision on the Cheyenne River Sioux Indian Reservation in South Dakota in 1979. There, plaintiffs sought damages under South Dakota's wrongful death statute (SDCL 21–5–7) for the deaths of their parents in the accident. The court noted that the record did no more than prove the fact that defendant was intoxicated at the time of the accident and was totally devoid of evidence to show actual or presumed malice necessary to grant an award of punitive damages. The court noted that drunkenness alone is insufficient to sustain a cause of action for punitive damages.

evidence of her financial condition and ability to pay. She asserts that she was in a financially destitute condition. Although she and her husband owned a home, she asserts that Flockhart offered no testimony whatsoever as to the value of the home or whether there was an outstanding mortgage on it.

Wyant notes, too, that she worked approximately fifteen hours a week at a campground and the most she has ever earned in any year was approximately $2,400.00. She observes that it would take her 158 months, or 12.5 years, paying the full $2,400 a year to pay the principal of the punitive damage verdict (noting that this does not take into account the matter of post-judgment interest). She asserts therefore that the size of the punitive damage award was both outside the evidence and in disregard of her financial ability to pay.

This court has identified five factors as having a bearing upon the amount of punitive damages. These factors are: (1) the amount allowed in compensatory damages; (2) the nature and enormity of the wrong; (3) the intent of the wrongdoer; (4) the wrongdoer's financial condition; and (5) all of the circumstances attendant to the wrongdoer's actions. *Groseth Int'l Inc. v. Tenneco Inc.*, 440 N.W.2d 276, 278 (1989); *Wangen v. Knudson*, 428 N.W.2d 242, 246 (S.D.1988).

The heart of the matter here is *Wangen* factor four, the wrongdoer's financial condition. Wyant asserts that because she does not have the *present* ability to pay the punitive damage award, the award cannot stand, and must be reversed. However, that factor alone is not determinative. We must consider all five factors.

Punitive damages must not be oppressive or so large as to shock the sense of fair-minded people, but they may considerably exceed compensatory damages. *Wangen, supra* at 246. Furthermore, to accomplish the objective of punishing the wrongdoer and deterring others from similar wrongdoing, punitive damages must be relatively large. *Id.; Hulstein v. Meilman Food Indus.*, 293 N.W.2d 889 (S.D.1980).

Wyant correctly points out that the test to be employed by courts in determining when damages are excessive was stated initially by this court in *Schuler v. City of Mobridge*, 44 S.D. 488, 493, 184 N.W. 281, 283 (1921). The test is:

> The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption. In short, the damages must be flagrantly outrageous and extravagant[.]

*See also Klug v. Keller Industries, Inc.*, 328 N.W.2d 847 (S.D.1982).

Here, as Flockhart notes, Wyant is approximately fifty years of age, and chooses to work only a few hours each week. Wyant's husband supports her and provides for all the necessities of her life.

The defendant's financial condition is but one factor to consider.[8] Here, we cannot say that the amount of damages the jury awarded was "flagrantly outrageous and extravagant." *Schuler, supra.*

We have considered the other issues raised by Wyant and find them lacking in merit.

Affirmed.

WUEST, HENDERSON and SABERS, JJ., concur.

MORGAN, Retired J., concurs in part and dissents in part.

AMUNDSON, J., not having been a member of the Court at the time this case was considered, did not participate.

---

8. *See Puz v. McDonald*, 140 Ariz. 77, 680 P.2d 213 (Ariz.App.1984) (the court held that defendant's wealth was but one factor to be considered in upholding an award of $200,000 in punitive damages even though the award exceeded the defendant's present assets); *Wagner v. McDaniels*, 9 Ohio St.3d 184, 459 N.E.2d 561 (1984) (award of $100,000 in punitive damages although defendant was earning $7.00 per hour found not excessive).

MORGAN, Retired Justice (concurs in part and dissents in part).

I dissent on Issue I, the interpretation of SDCL 21–1–4.1, without further writing, and concur on Issues II and III.