Daniel SHIPPEN, Plaintiff and Appellee,

v.

Sherman V. PARROTT, Defendant and Appellant.

No. 17732.

Supreme Court of South Dakota.

Considered on Briefs Sept. 2, 1992.

Decided Aug. 25, 1993.

Robert W. Van Norman, Charles J. Mickel, Rapid City, for plaintiff and appellee.

Charles Poches, Jr., Poches and Lee, Fort Pierre, for defendant and appellant.

HENDERSON, Justice (on reassignment).

## PROCEDURAL HISTORY/ISSUES

On January 3, 1989, Daniel Shippen (Shippen) commenced this action against Sherman Parrott (Parrott) advancing three claims: intentional sexual assault and battery, interference with Shippen's contractual (marital) relationship, and intentional infliction of emotional distress (IIED). Both parties waived trial by jury, and following a May, 1991 trial, the trial court rejected the interference with a contractual relationship claim. However, Shippen prevailed on the remaining claims and received compensatory damages for past and future medical and psychiatric costs, plus pain and suffering, in the amount of $75,846.88. Additionally, the trial court awarded punitive damages totaling $113,000.00. Parrott challenges these awards based upon the following issues:

I. Was there sufficient evidence to prove a continuous tort and toll the statute of limitations?

II. Did the trial court err in applying the discovery rule in tolling the statute of limitations?

III. Were alleged acts occurring more than two years before the commencement of this action barred by the statute of limitations?

IV. Did Shippen sustain his burden of proving discovery within two years of this action?

V. Does SDCL 15–2–22(2) toll the statute of limitations?

VI. Was the evidence sufficient to sustain the judgment and award?

VII. Did the contacts between Shippen and Parrott during the two years prior to commencement of this action constitute intentional assault and battery?

VIII. Did the trial court err in allowing two witnesses to testify concerning the truth and veracity of Shippen?

We have reduced the treatment of these eight issues to five separate discussions and holdings.

We affirm in part and reverse and remand in part.

### FACTS

During infancy, Shippen's parents divorced. By age five, his mother had remarried a banker, who died approximately one year later.

Enter Parrott, a man who had worked at the bank with Shippen's stepfather. Parrott and Shippen's mother developed a relationship which lasted for a considerable length of time and eventually became sexual. Parrott's interest quickly spread to Shippen and his siblings. Mother further encouraged Shippen and his twin brother, David, to associate with Parrott, believing him to provide a healthy male adult role model for the boys.

Parrott resided in the basement of the house he shared with his mother, an elderly woman who was bedridden and hard of hearing. His basement living quarters included a pool table, pizza oven, popcorn popper, clown collection and waterbed. In 1975, when Shippen was eleven years old, he began spending the night at Parrott's home, at Parrott's request. Young Shippen, intrigued by the waterbed, asked to sleep in it. This necessitated that he and Parrott, nearly 33 years his senior, sleep together. On one such sleepover, Parrott fondled Shippen's penis. As these visits continued, the sexual conduct escalated to Parrott performing oral sex upon him. Shippen did, however, successfully resist Parrott's attempts at anal intercourse. Similar sexual encounters occurred when Shippen's twin stayed overnight with Parrott.

As Parrott continued his relationship with the mother, and the boys, he provided the boys with money, clothes and gifts, including securing the return of a repossessed car and replenishing their checking accounts when the balance was low. At one point, he gave Shippen a car, with Parrott remaining on the title as lienholder.

Conversely, Shippen's high school academic performance was sub-par. His aggressive behavior not only led to fights, but on one occasion at age 16, he took a loaded pistol to Parrott's home with the intent of killing him. Shippen was by no means monogamous, engaging in sexual relationships with a male classmate and his future wife, Juli, yet continuing his encounters with Parrott. In 1984, when Juli became pregnant, Shippen married her, in part, to escape Parrott's advances. Although no sexual relations between the men occurred during the marriage, they frequently communicated with one another. Occasionally, Parrott sent gifts and money to the couple.

In 1986, following marital problems and Shippen's increased involvement with the gay lifestyle in Minneapolis and other homosexual relationships, he and Juli separated. They divorced two years later. Despite six months of individual and group counseling during his separation, Shippen was unable to reconcile his conflicting homosexual and heterosexual tendencies.

One night in May, 1987, Shippen permitted Parrott to stay at his home. Shippen awoke during the night to find Parrott fondling his genitals. Parrott also attempted to perform oral sex on him, but Shippen repulsed the attempt. Parrott again visited Shippen the

following month. Upon entering the home, Parrott pushed Shippen to the couch, attempted to kiss him and place his hand inside Shippen's pants, and tried to force oral sex on Shippen. Once more, Shippen successfully fought off Parrott's advances.

Since 1986, Shippen has continued therapy for mental disorders arising from his sexual conflicts, but has resigned himself to a homosexual lifestyle in Colorado. Meanwhile, despite family requests to leave them alone, Parrott began corresponding with Shippen's stepbrother, John, when John served as a soldier in Operation Desert Storm.

Following proceedings before the trial court, the trial court applied the discovery rule and continuing tort theories of law and held Parrott liable for continuous sexual assaults and batteries and intentional infliction of emotional distress (IIED) upon Shippen dating back to 1975.

## DECISION

### 1. *Continuing Ill Effects Are Not Continuing Torts.*

■ Alleged continual ill effects are not actionable under a continuing tort theory. *Brishky v. State*, 479 N.W.2d 489, 492 (S.D. 1991); *Moeller v. State*, 474 N.W.2d 728 (S.D. 1991). Trial court's conclusions of law hold that Shippen suffered from "post traumatic stress disorder," in conjunction with the "coping mechanisms" of "repression and suppression." These were the continuing ill effects of Parrott's actions and do not constitute a basis for recovery in tort under settled law. In effect, trial court disregarded the above 1991 South Dakota Supreme Court decisions. We may review these conclusions of law de novo. *Permann v. Dept. of Labor, Unemp. Ins. D.*, 411 N.W.2d 113 (S.D.1987).

■ Although a continuing relationship existed between the two men from 1984 to 1987, there were no sexual contacts. To find that this continuing, three-to four-year nontortious relationship is sufficient to link two series of intentionally tortious acts would serve only to defeat applicable statutes of limitations. Certainly, Parrott's despicable conduct provides a strong temptation to permit recovery under this tort theory, however,

we have no intention of reversing or overruling settled law. Rather, the trial court's conclusions are mistakes of law.

### 2. *Discovery Rule Not Recognized.*

■ In the well known South Dakota case of *Alberts v. Giebink*, 299 N.W.2d 454, 455 (S.D.1980), Alberts advocated that this Court should adopt the discovery rule, namely that an applicable statute of limitations does not begin to run until the harm is discovered rather than when the harm occurred. We refused to do so and accordingly noted: "The South Dakota Legislature, however, has specifically rejected the discovery rule." We further expressed therein:

The legislature has thus acknowledged and rejected a discovery rule in South Dakota. We cannot abridge that intent.

*Id.* at 456.

Furthermore, as recent as 1990, in *Kurylas, Inc. v. Bradsky*, 452 N.W.2d 111 (S.D. 1990), this Court again declined to follow the discovery rule. At page 114 thereof, this Court expressed:

Here, as in *Schoenrock*, Kurylas urges the court to follow a date of damage or injury rule to determine when the statute begins to run for attorney malpractice actions. This type of theory is also referred to as the discovery rule. *South Dakota has chosen not to follow the discovery or date of damage rule.* The legislature has specifically set up an "occurrence" rule. This court has previously stated:

The general rule is that in the absence of an attorney's fraudulent concealment of his negligent advice, the statute of limitations on a claim of attorney malpractice begins to run at the time of the alleged negligence and *not from the time when the negligence is discovered or the consequential damages are imposed.* (Emphasis added.)

In Conclusion of Law # 12, the trial court found that two legal theories exist, within the facts of the case, which exempt this case from being time-barred by the statute of limitations. "These two theories include the application of the discovery rule and the theory of continuing tort."

Although not formally concluding (as a matter of law) that late discovery spawned a tort, it is evident that the trial court would inferentially hold that "repression or post-traumatic stress disorder" caused Shippen not to discover a tort upon him. As our Legislature has yet to permit such an action, the settled law cited above holds that the trial court's conclusion is also a mistake of law. *Permann, supra.*

### 3. *Statutes of Limitations Applicable.*

■ With the discovery rule and continuous tort theories extinguished, we must then look to the applicable statutes of limitations. As the disabilities of minority age and alleged mental illness coexisted until Shippen's eighteenth birthday on July 21, 1982, SDCL 15-2-22 permits a tolling of the statute for a maximum of five years, or until July 21, 1987. However, claims which arose after the eighteenth birthday, but during the mental illness, must be challenged within five years of the tort or within one year after the disability ceases, whichever is earlier. According to the trial court, the suppression and repression had been sufficiently lifted by March 1987. Thus, Shippen had until March of 1988 to take action against Parrott for those torts occurring during the previous five years of his claimed mental illness. *This action did not commence until January 3, 1989.* Therefore, we need not consider the accuracy and validity of the applications of these extensions, as the suit was filed beyond their respective statutory periods.

■ Although the circumstances presented by Parrott's actions are egregious, his "defense predicated upon the statute of limitations is meritorious and is not to be disregarded with disfavor by this court." *Merkwan v. Leckey,* 376 N.W.2d 52, 54 (S.D.1985). Under 15-2-15(1), only those assaults and batteries occurring two years prior to filing are actionable. A three-year limitations period is possible for IIED. SDCL 15-2-14(3). Sexual contacts between Parrott and Shippen ceased in 1984, well outside the applicable limitations period, and did not resume until 1987. Hence, no claims occurring prior to January 3, 1986 under an IIED theory— January 3, 1987 for assault and battery—are actionable, i.e., only those sexual contacts occurring during May and June of 1987 fall inside the statutory period.

### 4. *Expert Testimony Properly Admitted.*

■ A "witness may not testify as to another witness' credibility or truth-telling capacity because such testimony would invade the exclusive province of the jury to determine the credibility of a witness." *State v. Floody,* 481 N.W.2d 242, 249 (S.D. 1992). Applying criminal law authorities, Parrott asserts that expert testimony improperly bolstered Shippen's claims of child abuse and invaded the province of the jury in this civil action. Granted, counsel for Shippen prefaced several questions with phrases similar to: "When Parrott sexually abused Shippen ..." Although such remarks are improper and assume the ultimate issue, we note that neither expert was asked if Parrott had sexually abused Shippen and neither improperly bolstered Shippen's testimony. Thus, we find Parrott's arguments to be without merit.

■ We have previously held that in an action tried to the trial court, there exists a presumption that the trial court will disregard inadmissible evidence, which includes improperly admitted testimony. *In re R.S.S.,* 474 N.W.2d 743, 750 (S.D.1991); *People in Interest of M.W.,* 374 N.W.2d 889, 893 (S.D.1985); *Sulzbach v. Town of Jefferson,* 83 S.D. 156, 159, 155 N.W.2d 921, 923 (1968). Furthermore, the trial court has broad discretion concerning the qualification of expert testimony. The trial court's decision as to such matters will not be reversed on appeal absent a clear showing of abuse of discretion. *Stormo v. Strong,* 469 N.W.2d 816, 822 (S.D. 1991); *Zepp v. Hofman,* 444 N.W.2d 28, 31 (S.D.1989). As the parties waived a jury trial, we find the trial court equipped to sift through any excess or perceived inadmissible evidence. *See United States v. DeSisto,* 329 F.2d 929 (2d Cir.1964), *cert. denied,* 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964); *R.S.S.* at 750 (In a trial to the court in which admissible evidence supports the findings, additional evidence, though inadmissible, is nonprejudicial).

Furthermore, the bulk of the alleged improper testimony concerned matters beyond the two-year statutory period, not the causes of action occurring during 1987. Based on the trial court's ability to distinguish between admissible evidence and nonprejudicial surplus evidence, we find no error.

### 5. Evidence Is Sufficient.

As the trial court's findings of fact are presumed correct, we will not seek reasons to reverse the trial court. *Marnette v. Morgan,* 485 N.W.2d 595 (S.D.1992); *Lytle v. Morgan,* 270 N.W.2d 359 (S.D.1978). Under the clearly erroneous standard, this Court must be left with a definite and firm conviction that a mistake has been made. *Selle v. Pierce,* 494 N.W.2d 634 (S.D.1993).

Due to Shippen's repeated voluntary contacts with Parrott, plus a three-year period with no sexual contacts, we cannot justly describe their entire relationship as a tortious one. Conversely, the evidence does not support the angelic claims of Parrott. In fact, the trial court found that "[Parrott's] testimony, for the most part, is false." This Court gives due regard to the opportunity of the trial court to judge the credibility of witnesses. *O'Connor v. King,* 479 N.W.2d 162, 164 (S.D.1991). As for the sexual advances made during 1987, they survive under settled law. Although Parrott maintains the acts were consensual, he admits that the two alleged assaults occurring in 1987 were within the statutory period and may be determined by the factfinder. Finding the evidence supports both Shippen and the award, no mistake has been made.

Parrott additionally argues that the trial court erred in permitting punitive damages because the evidence did not meet the clear and convincing standard. SDCL 21–1–4.1. We explained this standard in *Flockhart v. Wyant,* 467 N.W.2d 473, 475 (S.D.1991), stating:

SDCL 21–1–4.1 requires the trial court to apply a clear and convincing evidence standard to determine, before any such claim may be submitted to discovery or to the jury, whether there is a *reasonable basis* to believe there has been a willful, wanton or malicious conduct on the part· of the party claimed against. That does *not* establish a clear and convincing evidence standard but merely requires clear and convincing evidence to show a *reasonable* basis. The clear and convincing language merely modifies the "reasonable basis" language to make a prima facie showing that punitive damages *may* be in order.

To resolve the issue of sufficiency of evidence, we examine the record to determine only if there is "competent and substantial evidence" to support the verdict. *Id.* at 478; *Hoffman v. Louis Dreyfus Corp.,* 435 N.W.2d 211, 213 (S.D.1989). Although we have held that the torts occurring prior to January 3, 1986 are not actionable, they remain credible in supporting the trial court's finding that Parrott's conduct "over the past 16 years is such that it evidences that degree of willful and wanton misconduct that demonstrates an evil, malicious, wanton and depraved state of mind." Such a finding highlights the *modus operandi,* so to speak, of Parrott and gives credence to Shippen's assertions.

Trial court expressly held that Parrott's testimony, for the most part, was false and successfully impeachéd. Having heard this testimony, the trial court was in a better position to determine the credibility of the witnesses. Under the *Hobelsberger* rule, the findings on the two surviving causes of action, were not clearly erroneous. *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455, 459 (1970).

Therefore, inasmuch as compensatory and punitive damages were lumped together on causes of action dating back to 1975, we reverse the damage award and remand to the trial court for a reassessment of compensatory damages for those torts suffered during the statutory period noted herein, particularly those two acts during 1987. Furthermore, the trial court is to determine the amount of punitive damages for those causes of action occurring subsequent to January 3, 1986. SDCL 21–3–2; *Flockhart* at 475–76.

Affirmed in part, reversed and remanded in part.

MILLER, C.J., and WUEST, J., concur.

SABERS and AMUNDSON, JJ., dissent.

SABERS, Justice (dissenting).

I dissent. The trial court correctly determined that Parrott committed a continuing tort against Shippen through June, 1987.

"Although this Court has never, in depth, explained the nature of a continuing wrong, other jurisdictions have. A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original action." *Brishky v. State*, 479 N.W.2d 489, 492 (S.D.1991) (citation omitted). The Court of Appeals for the District of Columbia stated the elements necessary to establish a continuing tort in *Whelan v. Abell*, 953 F.2d 663 (D.C.Cir.1992). According to the court, a plaintiff must show "(1) a continu[al] and repetitious wrong, (2) with damages flowing from the act as a whole rather than from each individual act, and (3) at least one injurious act within the limitation period." *Id.* at 673 (citation omitted). *See also Hendrix v. City of Yazoo City, Miss.*, 911 F.2d 1102 (5th Cir.1990) wherein the court stated that "the continuing violation doctrine embraces ... cases in which the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time-barred. In such cases, recovery may be had for all violations, on the theory that they are part of one, continuing violation." *Id.* at 1103.

Only in recent years have the courts applied the concept of a continuing tort to sexual assault and battery and intentional infliction of emotional distress. In *Twyman v. Twyman*, 790 S.W.2d 819 (Tex.Ct.App. 1990), *rev'd on other grounds*, 855 S.W.2d 619 (1993),[1] the Texas Court of Appeals held that a husband's demands that his wife engage in bondage in order to save their marriage constituted negligent infliction of emotional distress. The court refused to allow recovery for only the incidents of negligent infliction of emotional distress which had occurred within the statute of limitations. *Id.* at 820–21. Rather, the court allowed recovery for the cumulative effect of a continuous course of conduct which resulted in mental anguish. The *Twyman* Court noted that in the usual personal injury case, damages attributable to acts occurring outside of the statute of limitations are not recoverable because they involve acts that are "complete in themselves." But a continuing tort involves wrongful conduct that is repeated until desisted and causes injury over a period of years. In such a case, the cause of action is not complete and does not accrue until the tortious acts have ceased. *Id.* at 821.

Here, the trial court specifically found that:

> The relationship was one long continuous course of conduct since Daniel was eleven years old. There was a two year hiatus during Daniel's brief marriage to Julie. However, the Defendant did not cease and desist during this time. His methods were modified somewhat. There were no sexual contacts during this time period. Sherman Parrott, however, continued his relationship with Plaintiff by way of continuous contact, including physical contact, telephone communications and correspondence. He continued to exert some lesser degree of financial control. He was vigilant and when they separated, he again made his move by sexually assaulting Plaintiff. This evidence meets all of the criteria of *Alberts v. Giebink*, 299 N.W.2d 454 (S.D.1980) and therefore constitutes a continuing tort.

The trial court found ample, objective, corroborating evidence of the childhood sexual molestation of Shippen by Parrott. The evidence includes Parrott's own testimony, as well as his statements to Shippen's mother and sister, when confronted years later, that the boys knew what they were doing.

The testimony between Shippen and Parrott conflicts as to the May and June, 1987 advances. While admitting the occurrences, Parrott claims that Shippen consented to the sexual contact. Conversely, Shippen testified that he actively resisted and was suc-

---

**1.** The Texas Supreme Court ruled that because the tort of negligent infliction of emotional distress is no longer recognized in Texas, the case must be reversed and remanded for a new trial to determine whether the facts support intentional infliction of emotional distress. *Id.*

cessful in thwarting Parrott's sexual advances. The trial court, after considering all of the evidence, along with the demeanor of the witnesses and their motives in testifying as to their respective versions of these two incidents, specifically found that Shippen was not embellishing or exaggerating when testifying concerning the issue of his consent in May and June, 1987 and that Parrott's testimony concerning these two events was false. The court stated:

> In the final analysis, this court has concluded that Parrott's testimony, for the most part, is false. He has been impeached successfully on adverse examination and his own prior letters impeach, to a certain extent, his present sworn testimony.

Mem. Decision p. 8.

The credibility of witnesses, the weight to be accorded to their testimony and the weight of evidence is for the trial court, *Nelson v. Palmquist*, 363 N.W.2d 570, 572 (S.D.1985) (citations omitted), and we are not at liberty to change findings where the trial court has resolved conflicts in the evidence.[2] *Insurance Agents, Inc. v. Zimmerman*, 381 N.W.2d 218, 219 (S.D.1986) (citation omitted); *Gross v. Conn. Mut. Life Ins. Co.*, 361 N.W.2d 259, 266 (S.D.1985) (citation omitted). Because the trial court's findings of fact as to the May and June, 1987 advances are not "clearly erroneous," we should hold that the trial court correctly determined that Parrott committed the continuing torts of sexual assault and battery and intentional infliction of emotional distress through June, 1987.

In *Alberts v. Giebink*, 299 N.W.2d 454 (S.D.1980), we stated: "when a tort involves a continuing injury, the cause of action accrues and the statute of limitations commences when the wrong terminates." *Id.* at

456 (citations omitted). *See also Page v. United States*, 729 F.2d 818, 821 (D.C.Cir. 1984) (citations omitted). "Moreover, since 'one should not be allowed to acquire a right to continue the tortious conduct,' it follows logically that statutes of limitation should not run prior to its cessation." *Id.* at 822 (quoting *Fletcher v. Union Pac. R.R.*, 621 F.2d 902, 908 (8th Cir.1980)). In this case, the final act or occurrence, sufficient to commence the running of the statute of limitations, occurred in June, 1987 when Shippen thwarted Parrott's attempts. According to SDCL 15–2–15(1),[3] Shippen had two years, or until June, 1989, to commence a cause of action against Parrott for sexual assault and battery. According to SDCL 15–2–14(3),[4] he had three years, or until June, 1990, to commence a cause of action for intentional infliction of emotional distress. This lawsuit was commenced on January 3, 1989. Therefore, Shippen was within the prescribed time limitation.

The trial court was correct in awarding Shippen damages for the entire period during which the tortious acts were committed. "Since usually no single incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of significant harm, it seems proper to regard the cumulative effect of the conduct as actionable." *Twyman*, 790 S.W.2d at 821 (citation omitted).

The Wisconsin Supreme Court determined that the continuous negligent treatment of a patient constituted a single unit of negligent treatment in *Tamminen v. Aetna Casualty and Sur. Co.*, 109 Wis.2d 536, 327 N.W.2d 55 (1982). Therefore, the statute of limitations for the entire course of conduct, a unitary episode, did not commence to run until the tortious conduct ceased. "Because a cause of

---

2. SDCL 15–6–52(a) provides in part:
   Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

3. SDCL 15–2–15 provides in part:
   Except where, in special cases, a different limitation is prescribed by statute, the following civil actions ... can be commenced only within two years after the cause of action shall have accrued:

   (1) An action for libel, slander, assault, battery, or false imprisonment[.]

4. SDCL 15–2–14 provides in part:
   Except where, in special cases, a different limitation is prescribed by statute, the following civil actions ... can be commenced only within three years after the cause of action shall have accrued:
   ....
   (3) An action for personal injury.

action is not to be split, the plaintiff is entitled to have the entire cause of action adjudicated if the action is timely brought, measuring that timeliness from the last negligent act in the related continuum[.]" *Id.* 327 N.W.2d at 65. *See also Kolpin v. Pioneer Power & Light Co.,* 162 Wis.2d 1, 469 N.W.2d 595 (1991) which cited with approval *Tamminen* and stated that "in order for a cause of action to accrue, it must be complete. It is complete when the negligent act occurs, or the last act occurs in a continuum of negligent acts, *and* when the plaintiff has a basis for objectively concluding that the defendant was the cause of the plaintiff's injuries and damages." *Id.* 469 N.W.2d at 604 (emphasis in original).[5]

While we may not have found Parrott's conduct to be intentional infliction of emotional distress, Judge Grosshans, as *fact finder,* found that there was *contact* during the two-year period that was a continuing tort. As Judge Grosshans stated, this conduct "meets all the criteria of *Alberts v. Giebink* . . . and therefore constitutes a continuing tort." We are bound by this finding unless clearly erroneous.

> In applying the clearly erroneous standard we must bear in mind that our function is not to decide factual issues de novo. The question for the appellate court is not whether it would have made the same findings the trial court did, but whether on the entire evidence it is left with a definite and firm conviction that a mistake has been committed.

*In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455, 459 (1970) (citing *Zenith Radio Corp. v. Hazeltine Research Inc.,* 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129).

Certainly Judge Grosshans was not clearly erroneous in finding this conduct by Parrott

to be intentional infliction of emotional distress, even if it was not assault or battery. In reversing this decision, the majority opinion, without saying so, is going against years of sound precedent and *stare decisis* in this court, including *Hobelsberger* and *Permann v. South Dakota Dept. of Labor,* 411 N.W.2d 113 (S.D.1987). I am not, however, "left with a definite and firm conviction that a mistake has been committed," *Hobelsberger,* 181 N.W.2d at 459, and therefore, vote to affirm.

Because I vote to affirm the trial court's decision on the basis of a continuing tort, it is not necessary to discuss the issue of whether the statute of limitations was tolled due to the discovery rule. It is necessary, however, to address the statement made in the majority opinion that "our Legislature has yet to permit such an action[.]"

SDCL 26–10–25 provides:

> *Time limit on civil action arising out of sexual abuse of child.* Any civil action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within three years of the act alleged to have caused the injury or condition, or three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by the act, whichever period expires later.

And SDCL 26–10–26 provides:

> *Date of discovery in child sexual abuse action.* The victim need not establish which act in a series of continuing sexual abuse or exploitation incidents caused the injury complained of, but may compute the date of discovery from the date of discovery of the last act by the same perpetrator

---

**5.** In *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of America,* the Third Circuit, applying the "continuing violation theory" to a union's duty of fair representation, stated:

> In most federal causes of action, when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuous practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.

927 F.2d 1283, 1295 (3rd Cir.1991) (citation omitted). *See also Filloramo v. Johnston, Lemon & Co., Inc.,* 700 F.Supp. 572 (D.D.C.1988) wherein the court stated that under the continuing tort doctrine "a plaintiff can recover for *all* damages resulting from *all* of defendant's wrongful conduct, provided *any* of it occurred within the statutory period." *Id.* at 575 (emphasis added).

which is part of a common course of conduct of sexual abuse or exploitation.

These statutes were enacted in 1991 and do not apply to this action [6] as it was started in 1989. They clearly indicate, however, the position of the Legislature and the State of South Dakota. The Legislature has indeed chosen to "permit such an action." Under the common law theory of a continuing tort, we should also.

AMUNDSON, J., joins this dissent.

---

**6.** Shippen commenced this action on January 3, 1989, which was within the three year statute of limitations in SDCL 26–10–25 because, as the majority opinion notes, the trial court found that the suppression and repression of Shippen had been sufficiently lifted by March, 1987.