Ernie HOFF and John Ganje,
Plaintiffs and Appellees,

v.

Craig BOWER and Midwest Paint
Service, Inc., a corporation,
Defendants and Appellants.

No. 17808.

Supreme Court of South Dakota.

Submitted on Briefs Oct. 7, 1992.

Decided Nov. 25, 1992.

Chester A. Groseclose, Jr., Richardson, Groseclose, Kornmann & Wyly, and Robert M. Ronayne of Ronayne & Richards, Aberdeen, for plaintiffs and appellees.

Dennis Maloney of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for defendants and appellants.

SABERS, Justice.

Ernie Hoff (Hoff) and John Ganje (Ganje) sued defendants for breach of employment contract and negligent, reckless, intentional or fraudulent misrepresentation. The jury found for plaintiffs on intentional or fraudulent misrepresentation and awarded compensatory and punitive damages. Defendants appeal. We affirm.

FACTS

On Sunday, February 3, 1991, Hoff and Ganje responded to an advertisement placed in the *Aberdeen American News* by Midwest Paint Service, Inc. (Midwest). The ad sought experienced brush painters to work six to eight weeks in California.[1] Later that day, Hoff met with Craig Bower (Bower), vice president of Midwest, concerning the position. Hoff and Bower discussed wages, equipment, housing and liv-

---

1. The ad did not list the specifics of the job.

Hoff and Ganje learned during the interview

ing conditions. Hoff was told that there was a campground in the vicinity of the worksite with reasonable rates. Hoff expressed his fear of working at heights over 40 feet. Bower assured Hoff that the highest working level would be no more than 40 feet, and probably less. The following day, Hoff met with Craig and Bart Bower, president of Midwest, to discuss further the terms of the job.

After speaking with Bower on Sunday, Ganje met with him Monday regarding the same position. They discussed the equipment at the site, including the availability of ladders, a boom truck, stack scaffolding, and the availability and cost of accommodations in the area. Ganje was told that accommodations were available in the area at a cost of $40.00 per person, per week.

Hoff and Ganje departed for California on Wednesday, February 6, driving a pickup truck owned by another employee of Midwest and loaded with supplies that Midwest needed delivered to the jobsite in California. Midwest provided Hoff with $300 to cover the cost of gas and operating the pickup. Hoff, Ganje and another employee were each given $90 to cover motel and food expenses during the trip. Under the agreements, Hoff and Bower were each to be paid $10.00 per hour for painting, but were not to be compensated for their time traveling to California.

The truck broke down several times during the trip. As a result, Hoff and Bower were required to spend four nights in a motel room. Their funds completely depleted, they spent a portion of the money earmarked for the pickup to cover the cost of the motel room on the fourth night. Subsequently, they were required to reimburse Midwest for the cost of the fourth night.

Upon arriving in California, Hoff and Ganje discovered that the living and working conditions were not as promised. The campground was situated on a polluted lake which smelled "awful." The showers

and toilets did not work and their campsite did not accommodate 110 volt connections. Attempts to find housing in Brawley proved unsuccessful. Hoff and Ganje were able to find a motel room in El Centro at a cost of $85.00 per person, per week. The rooms were filthy and cockroach infested. The motel was located in a dangerous section of town and had inadequate lighting. Hoff and Ganje stayed there four nights.

The jobsite was equally unacceptable. The stack scaffolding, boom truck, and ladders were never provided. Hoff and Ganje attempted to paint from Sky Climbers, but were forced to use a basket climber due to the difficulty of brush painting from a Sky Climber. Safety lines were repeatedly requested but never provided. According to Hoff's testimony, during the three days that he and Ganje worked at the site, he scraped and painted approximately 5,000 window frames. While Hoff never painted above 35 feet during his employment, there were two additional banks of windows above 35 feet which had to be painted to finish the job.

On the morning of the fourth day, when no one arrived in El Centro by 9:30 a.m. to pick up Hoff and Ganje, Hoff called Bart Bower. When Bower accused Hoff and Ganje of wrecking one of Midwest's pickups, Hoff quit. Hoff and Ganje borrowed money from relatives to pay for the bus ride home, leaving behind their own painting equipment which they had brought with them from South Dakota.

When Hoff and Ganje brought this action, Midwest counterclaimed for breach of the employment contract and negligent destruction of property. The jury found for Hoff and Ganje on intentional or fraudulent misrepresentation. No recovery was allowed for breach of contract. Hoff and Ganje were awarded compensatory damages in the amount of $639.45 and $623.45 respectively. They were each awarded punitive damages of $10,000 from Bower and $7,000 from Midwest.

that the job was in Brawley, California repaint-

ing window frames at the Holly Sugar Refinery.

Bower and Midwest each filed motions for a new trial and to reduce or set aside the verdict. These motions were denied. Bower and Midwest appeal.

1. Whether the jury's failure to find breach of contract prevents an award for compensatory and punitive damages.

■ The jury found that Hoff and Ganje were not entitled to recover for breach of contract. They did find liability for intentional or fraudulent misrepresentation. Under South Dakota case and statutory law, compensatory damages are available under the tort of intentional or fraudulent misrepresentation. *See* SDCL's 20–10–1 [2] and 21–3–1 [3]. As this court stated in *Trautman v. Coffman:*

> The right to damages for deceit as in other tort actions is founded upon the theory of full compensation for the injury sustained.... The damages which are recoverable are those flowing from the changed condition of the parties induced or brought about by the deceit.

*Trautman v. Coffman*, 39 S.D. 628, 632, 166 N.W. 150, 151 (1918). *See also Hoffman v. Louis Dreyfus Corp.*, 435 N.W.2d 211 (S.D.1989).

A jury may award punitive damages "where the defendant has been guilty of oppression, fraud, or malice, actual or presumed ... committed intentionally or by willful and wanton misconduct[.]" SDCL 21–3–2. The special verdict form allowed the jury to award punitive damages only if they found that Hoff and Ganje were entitled to recover on the theory of intentional or fraudulent misrepresentation. Having found the defendants liable, an award of punitive damages was proper. (*See Aschoff v. Mobil Oil Corp.*, 261 N.W.2d 120

(S.D.1977) in which this court allowed actual and exemplary damages for false and fraudulent representations inducing the execution of a contract.)

2. Whether the punitive damage award bears a reasonable relationship to the compensatory damage award.

■ The jury found that Hoff was entitled to compensatory damages of $639.45 and Ganje of $623.45. Additionally, they awarded each party punitive damages of $10,000 against Bower and $7,000 against Midwest. Bower and Midwest argue that the punitive damage award is not reasonably related to the compensatory damage award. According to Bower and Midwest, under *Pacific Mut. Life Ins. Co. v. Haslip*, — U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), 12 factors *must* be considered by a court or jury before an award of punitive damages will be sustained. They claim Hoff and Ganje failed to show any of the 12 factors and therefore, the punitive damage awards cannot be sustained.

A reading of *Haslip*, however, indicates that the Court was addressing the constitutionality of punitive damage procedures in Alabama. "Punitive damages have long been a part of traditional state tort law." *Haslip*, — U.S. at ——, 111 S.Ct. at 1041, 13 L.Ed.2d at 18, (citation omitted). The *Haslip* Court was not mandating a "new direction" for *all* state courts in awarding punitive damages, but discussing the standards established by the Alabama Supreme Court and whether the "application of these standards ... imposes a sufficiently definite and meaningful constraint on the discretion of Alabama fact finders in awarding punitive damages." *Id.* at ——, 111 S.Ct. at 1045.

In *Wangen v. Knudson*, this court outlined five factors which bear upon the

---

**2.** SDCL 20–10–1 provides:

> One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.

**3.** SDCL 21–3–1 provides:

> For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.

award of punitive damages in South Dakota. They are:

1. The amount allowed in compensatory damages;

2. The nature and enormity of the wrong;

3. The intent of the wrongdoer;

4. The wrongdoer's financial condition;

5. All of the circumstances attendant to the wrongdoer's actions.

*Wangen v. Knudson,* 428 N.W.2d 242, 246 (S.D.1988) (citing *Ruple v. Brooks,* 352 N.W.2d 652, 656 (S.D.1984)). In applying these factors, we noted:

Punitive damages must be relatively large to accomplish the objective of punishing the wrongdoer and deterring others from similar wrongdoing. There is no precise mathematical ratio between compensatory and punitive damages. The allowance and amount of punitive damages turns on the particular facts of each case. Punitive damages must not be oppressive or so large as to shock the sense of fair-minded men, *but they may considerably exceed compensatory damages.*

*Wangen,* 428 N.W.2d at 246 (citations omitted) (emphasis added). Bower and Midwest argue that the jury and the court "ignored the tenets" of *Wangen* and awarded punitive damages in excess of what they should be. We disagree.

The jury was instructed to consider the *Wangen* factors in determining the amount of punitive damages. We agree that there must be a reasonable relationship between the compensatory damage award and the punitive damage award. *Centrol, Inc. v. Morrow,* 489 N.W.2d 890, 896 (S.D.1992). We do not, however, find these punitive damages disproportionate to the compensatory damages. *See K & E Land and Cattle, Inc. v. Mayer,* 330 N.W.2d 529, 532 (S.D.1983) in which this court approved an award of $199.60 in compensatory damages and $7,000.00 in punitive damages.

The nature and enormity of the wrong, as well as the intent on the part of Bower and Midwest, is substantial. As the facts indicate, Bower and Midwest needed brush painters at their job site in California. They were willing to say almost anything to induce Hoff and Ganje to travel to California. It appears from the transcript that nearly every promise made to these two men was a lie. *Wangen* held that the trial court abused its discretion when it ordered a new trial subject to Wangen's acceptance of a remittitur and stated:

[T]he jury finding the liability issue in favor of the plaintiff established that defendants acted intentionally or recklessly causing severe emotional distress to Wangen. The jury had the opportunity to weigh the nature and enormity of the wrong and the intent of the wrongdoers against the mitigating circumstances set forth in the trial court's order. The trial court cannot substitute his opinion as to the weight of the evidence in place of the jury's verdict.

*Wangen,* 428 N.W.2d at 247 (citation omitted). As in *Wangen,* it is not our duty to substitute our opinion as to the weight of the evidence for the jury's verdict.

The financial condition of Midwest and Bower is adequate to support these punitive damage awards. Midwest's gross profits averaged $492,641 the last three years. According to a 1991 financial statement, Bower's net worth was $1,330,618. Punitive damage awards in the amount of $10,000 against Bower and $7,000 against Midwest are "not out of line with their ability to pay." *Wangen,* 428 N.W.2d at 247. The punitive damage award must be sufficiently large to accomplish the objectives of punishing the wrongdoer and deterring others from committing similar acts. A smaller punitive damage award may negate these objectives. We are not convinced that the punitive damage awards to Hoff and Ganje are excessive. *Id.* Therefore, we affirm.

MILLER, C.J., and WUEST, HENDERSON and AMUNDSON, JJ., concur.