1996 SD 94

**Edward SCHAFFER, Plaintiff and Appellee,**

v.

**EDWARD D. JONES & CO., Defendant and Appellant.**

**No. 19277.**

Supreme Court of South Dakota.

Considered on Briefs April 24, 1996.

Decided July 24, 1996.

---

Michael J. Schaffer of Davenport, Evans, Hurwitz and Smith, Sioux Falls, for plaintiff and appellee.

Robert D. Hofer and David A. Pfeifle of Riter, Mayer, Hofer, Wattier & Brown, Pierre, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1] Edward D. Jones & Co. (Jones) appeals from a judgment awarding Edward Schaffer punitive damages in the amount of $750,000. Jones also appeals the trial court's post-trial order denying Jones' motions for a new trial or, in the alternative, for vacatur or remittitur of the punitive damages award, and for judgment notwithstanding the verdict or, in the alternative, for a new trial. We affirm.

## FACTS AND PROCEDURE

This appeal derives from the retrial on the issue of punitive damages following our decision in *Schaffer v. Edward D. Jones & Co.,* 521 N.W.2d 921 (S.D.1994) (*Schaffer I* ). The facts relevant to this appeal were set forth fully in *Schaffer I* and will therefore be discussed only briefly herein as necessary. In the trial which led to *Schaffer I,* the jury awarded Schaffer $25,000 in compensatory damages for fraud, deceit, and misrepresentation based upon the sale of a Natural Resource Management (NRM) oil and gas income limited partnership investment. The jury further awarded $500,000 in punitive damages.[1] We remanded the case for a new trial on the punitive damages. We held that the trial court should have admitted, for the jury's consideration, evidence of Jones' financial worth as well as evidence of Schaffer's profitable investments with Jones, both of which could have had a mitigating effect on the amount of punitive damages awarded. In the second trial, the jury could have awarded none or any amount of punitive damages. *Schaffer I,* 521 N.W.2d at 926, n. 8.

[¶ 3] The jury in the second trial found in favor of Schaffer and against Jones and awarded Schaffer punitive damages in the amount of $750,000. The trial court denied Jones' post-trial motions for a new trial, judgment notwithstanding the verdict, or for vacatur or remittitur of the punitive damage award. Jones appeals the denial of these post-trial motions and further appeals the final judgment, raising the following issues:

1. Did the trial court err in allowing testimony of an expert witness who admitted having no expertise on limited partnership investments?

2. Did the trial court err in submitting instructions and a verdict form which

---

1. Schaffer's co-plaintiffs in that action, Jack and June Ehrich, were also awarded compensatory and punitive damages. Ehrichs have since settled their claim against Jones and were not a party to the remanded action or this appeal.

Jones claimed removed from the jury the issue of whether Jones' conduct justified a punitive damage award?

3. Did the trial court err in refusing to instruct the jury on the clear and convincing burden of proof standard?

4. Did the trial court abuse its discretion in failing to order vacatur or remittitur of the punitive damages award?

[¶ 4] We will address these issues in the order in which they are appealed.

## ANALYSIS AND DECISION

[¶ 5] **1. Did the trial court err in allowing testimony of an expert witness who admitted having no expertise on limited partnership investments?**

■ [¶ 6] We review questions of the admissibility of an expert witness' testimony under an abuse of discretion standard. *State v. Hill,* 463 N.W.2d 674, 676 (S.D.1990). We have long acknowledged that the trial court has broad discretion concerning the admission of expert testimony. *Id.* (citing *State v. Bachman,* 446 N.W.2d 271 (S.D.1989); *United States v. Purham,* 725 F.2d 450 (8th Cir. 1984)). The trial court's decision on such matters will not be reversed absent a clear showing of an abuse of discretion. *Id.* (citing *State v. Logue,* 372 N.W.2d 151 (S.D.1985)).

[¶ 7] Expert witness testimony is admissible under the statutory authority found within SDCL 19-15-2, which provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ [¶ 8] This statute serves four distinct functions: 1) it authorizes the use of expert testimony; 2) it provides the standard for determining whether expert testimony should be admitted in a particular case; 3) it provides a basis for determining whether an individual should be accorded expert status; and 4) it expands the form that expert testimony may assume. John W. Larson, South Dakota Evidence 475 (1991) (citing G. Weis-

senberger, Weissenberger's Federal Evidence § 702.1 at 297–98 (1987)). Whether an expert's testimony is admissible depends upon whether the testimony would assist the trier of fact in understanding the evidence or determining a fact in issue. It is for the trial court to make the initial decision on whether the testimony will assist the trier of fact. *Nebraska Depository Inst. Guar. Corp. v. Stastny,* 243 Neb. 36, 497 N.W.2d 657, 670 (1993). In *Hill,* 463 N.W.2d at 677, we stated "the determining factor in admitting expert testimony is if it would assist the jury in understanding matters that normally would not lie within a layman's breadth of knowledge." (citing *State v. Swallow,* 350 N.W.2d 606 (S.D.1984)). "'When opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time.'" *Wilkinson v. Rosenthal & Co.,* 712 F.Supp. 474, 479 (E.D.Pa.1989) (quoting FedREvid 702 advisory committee's note).

■ [¶ 9] Schaffer's expert witness, Robert Leacox, testified regarding the risks inherent in the NRM investment purchased by Schaffer as outlined in the fund's prospectus. Leacox also testified regarding the financial health of the NRM partnership as analyzed by three Jones officials in a July 1983 interoffice memorandum to Jones' managing partner. Leacox's testimony established what Jones' management knew about the risks involved in Schaffer's investment and when Jones knew of these risks. The jury could then compare this information with what Jones' broker, who sold Schaffer the investment, represented to Schaffer about the risks. In this case, Bill Edwards, the Jones broker who sold Schaffer the NRM income fund, testified that he had represented the fund as a "low risk conservative investment" when he sold it to Schaffer in September 1983. Schaffer received a sales brochure from Jones which represented the investment as low risk and "as safe as bonds." Approximately one month after purchasing the fund, Schaffer received the prospectus which provided what Schaffer believed to be a very different perspective on the risks associated with his investment. At that point, Schaffer called Edwards to back out of the investment and was informed that he could

not as there was no re-sale market for this type of limited partnership investment. The prospectus indicated, as Leacox testified, that the investment was speculative and the risks were in fact high.

[¶ 10] Jones challenges the admission of this testimony, claiming Leacox has no expertise on the subject of limited partnerships and, as such, could offer no opinion greater than that of a layperson. However, in reviewing Leacox's testimony, we note Leacox did not offer the objectionable testimony which Jones attributes to him. Rather, his testimony on direct examination by Schaffer narrowly focused on interpreting the investment risks as outlined in the prospectus received by Schaffer one month after he invested in NRM, and in explaining the analysis of NRM's financial condition described in Jones' interoffice memorandum written July 1983, two months before Schaffer invested in NRM. As a former stockbroker and manager of brokerage companies with 23 years of experience in the brokerage business, Leacox was sufficiently qualified to provide testimony on these subjects. *See Wilkinson*, 712 F.Supp. at 478 (finance professor permitted to testify concerning basic principles of commodities investing but not permitted to testify concerning excessive commodities trading in which he demonstrated insufficient knowledge of the subject matter).

[¶ 11] It is true that on cross-examination, Jones extensively questioned Leacox on his knowledge of limited partnerships and Leacox admitted his lack of expertise on this subject. However, Jones cannot now claim error on testimony it solicited upon cross-examination. After Jones opened the door on this evidentiary subject, Schaffer, on redirect, attempted to go into these same areas. Jones objected on the basis of lack of exper-

tise and the trial court properly sustained the objection.

[¶ 12] During voir dire of the jury in the second trial, it was learned that few of the jurors had experience in investing with brokerage firms. As such they may not have had knowledge of investment risks and terminology from their own experience and would have been assisted by such explanation. *See FDIC v. First Interstate Bank of Des Moines, N.A.*, 885 F.2d 423, 435 (8th Cir.1989) (expert witness testimony was admissible where it assisted jurors in understanding the function of bank's investment department, role of investment officers, and in gauging the importance of various information to these officers in handling investment accounts). We find Leacox's testimony to be sufficiently helpful to the jury under the standard set forth in SDCL 19–15–2 in understanding the issues involved in this case. We find no abuse of the trial court's discretion in its admission of this testimony.

[¶ 13] **2. Did the trial court err in submitting instructions and a verdict form which Jones claimed removed from the jury the issue of whether Jones' conduct justified a punitive damage award?**

[¶ 14] We review jury instructions as a whole and they are sufficient if they correctly state the law and so inform the jury. The trial court should instruct the jury on issues supported by competent evidence in the record and is not required to instruct on issues that do not find support in the record. *Bauman v. Auch*, 539 N.W.2d 320, 323 (S.D.1995).

[¶ 15] Jones claims that jury instructions numbered 27,[2] 28,[3] and 29[4] and the

**2.** Jury instruction 27 reads as follows:

In civil actions, the party who asserts the affirmative of an issue must prove that issue by a preponderance of the evidence.

By a preponderance of the evidence is meant such evidence as, when weighed with that opposed to it, has more convincing force and from which it results that the greater probability of truth lies therein. In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue preponderates, that is, has the greater convincing force, then your finding upon the issue must be against the party who has the burden of proving

it. In this action, it has already been established by a preponderance of the evidence that Edward D. Jones & Co. is liable to the Plaintiff for fraud, deceit, and misrepresentation, with respect to the sale of the NRM Limited Partnership interests;

It has also been established by a preponderance of the evidence that Plaintiff Edward Schaffer sustained compensatory damages in the sum of $25,000 as a proximate result of the fraud, deceit, and misrepresentation of Edward D. Jones & Co. in the sale of the NRM Limited Partnership interests to him;

jury verdict form submitted to the jury by the trial court removed the question whether punitive damages were even warranted in this case and sent the jury directly to the task of determining the amount of punitive damages to award Schaffer. We note at the outset that Jones made no objection to instruction 27 at trial. Jones further made no objection to the final version of instruction 28. Failure to object to the jury instruction or propose an alternative instruction waives the issue for appeal. *State v. Hage*, 532 N.W.2d 406, 412 (S.D.1995) (citing *State v. Burtzlaff*, 493 N.W.2d 1, 7 (S.D.1992); *State v. O'Connor*, 378 N.W.2d 248, 256 (S.D. 1985)).

[¶ 16] In *Schaffer I*, the jury unanimously found Jones guilty of fraud, deceit, and misrepresentation regarding transactions including the same NRM investment which is the subject of the present appeal. 521 N.W.2d at 925. The jury's verdict as to these claims became a final judgment which was not appealed by Jones. Prior to the appeal in *Schaffer I*, Jones paid the compensatory damage award with interest and court costs,

> The Plaintiff has the burden of proving by a preponderance of the evidence whether Edward D. Jones & Co. is also responsible for oppression, malice, willful and wanton misconduct, or reckless disregard of plaintiff's rights.
>
> In determining whether an issue has been proved by preponderance of the evidence, you should consider all of the evidence bearing upon that issue, regardless of who produced it.

3. Jury instruction 28 reads as follows:

> Punitive damages **may be awarded** against a defendant if you find that the plaintiff suffered injury to his person or property through the oppression, fraud, deceit, misrepresentation, malice, willful and wanton misconduct, or reckless disregard of plaintiff's rights.
>
> Oppression means subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights.
>
> Malice, as used in this instruction, is not simply the doing of an unlawful or injurious act; it implies that the act complained of was conceived in the spirit of mischief, or of criminal indifference to civil obligations. Such malice may be either actual or presumed from all of the material facts.
>
> Willful and wanton misconduct means something more than negligence. It describes conduct which transcends negligence and is different in kind and characteristics. It describes conduct which partakes to some appreciable extent, though not entirely, of the nature of a deliberate an [sic] intentional wrong. The conduct of the defendant is willful and wanton if the defendant intentionally did something which it should not have done or intentionally failed to do something which it should have done under such circumstances that it can be said that it consciously realized that its conduct would in all probability (as distinguished from possibly) produce the precise result which it did produce and would bring harm to the plaintiff.
>
> In this case, you are instructed that it has already been established that Edward D. Jones & Co. caused injury to the Plaintiff through fraud, deceit and misrepresentation. **You may, in your discretion, award punitive damages** if you find

that the Plaintiff suffered injury to his person or property through oppression, fraud, malice, willful and wanton misconduct or reckless disregard of Plaintiff's rights.

> The purpose of awarding punitive damages is to set an example and to punish the Defendant.
>
> If you find that punitive damages should be allowed, then in determining the amount you should consider the following factors: (1) the amount established as actual damages; (2) the nature and enormity of the wrong; (3) the intent of the Defendant; (4) the Defendant's financial condition; and (5) all of the circumstances attendant to the Defendant's action, including any mitigating circumstances which may operate to reduce without wholly defeating punitive damages.
>
> **The decision to award punitive damages is within your discretion. If you decide that punitive damages should be awarded to the Plaintiff, then write the agreed upon amount in the designated place on the Verdict for Plaintiff. If you decide that punitive damages should not be awarded to the Plaintiff, then return the Verdict for Defendant.** (emphasis added).

4. Jury instruction 29 reads as follows:

> When you have retired to your jury room, you will appoint one of your number as foreperson.
>
> When the same ten of your members have agreed upon **the amount of punitive damages, if any,** to be awarded against Edward D. Jones & Co. with respect to the investments made by the Plaintiff, that will be the verdict of the jury.
>
> You will be provided with a copy of these instructions which you will return into Court with your verdict and the exhibits in this case.
>
> If it becomes necessary during your deliberations to communicate with the Court, you may send a note by the bailiff. But, bear in mind that this jury is not to reveal to the Court or any person how the jury stands, numerically or otherwise, until after you have reached a verdict and reported the same into Court.
>
> When you have agreed upon a verdict and have completed, dated, and your foreperson has signed the verdict form, you will so report to the bailiff whereupon you will be conducted into Court where your verdict will be received. (emphasis added).

thereby fully satisfying that portion of the judgment.

[¶ 17] SDCL 21–3–2 provides in relevant part:

In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, ... the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

Although Jones claims it has never "conceded" guilt of any fraudulent conduct, upholding the judgment in *Schaffer I* is not dependent upon such concession by Jones. Jones cannot now argue that it was not guilty of fraud, deceit, and misrepresentation in its dealings with Schaffer regarding the NRM investment when it was so found at the first trial by a unanimous verdict which was not appealed.

[¶ 18] Jones claims the jury instructions are misleading in that they instruct the jury that Jones was guilty of fraud and that Schaffer had already proven a basis upon which punitive damages could be awarded. Jones asserts this is misleading because the first jury did not have the benefit of considering Schaffer's entire investment portfolio with Jones which would have demonstrated that Schaffer profited from other investments with Jones. Again, we note Jones did not appeal the judgment of fraud in *Schaffer I* and as such, is precluded from making such an argument at this late date.

[¶ 19] We turn now to a review of the instructions themselves. Jury instructions are reviewed as a whole and are sufficient if they correctly state the law and inform the jury. Error is not reversible unless it is prejudicial. *Bauman,* 539 N.W.2d at 323; *Larson v. Kreiser's, Inc.,* 472 N.W.2d 761, 762 (S.D.1991). When jury instructions mislead, conflict or confuse the jury, it constitutes reversible error. *Wallahan v. Black Hills Elec. Coop.,* 523 N.W.2d 417, 423 (S.D.1994). Our review of the challenged instructions indicates no error. The instructions correctly state the law of this case and do not usurp the jury's function of determining whether punitive damages should be awarded. We also note that two verdict forms were submitted by the trial court to the jury—one favoring the Plaintiff and one favoring the Defendant. Contrary to Jones' argument on appeal, we can find nothing in the trial court's instructions to indicate that the imposition of punitive damages was compulsory. The instructions are replete with references to the jury's discretion in determining whether to award punitive damages to Schaffer, and if so, in what amount.

[¶ 20] **3. Did the trial court err in refusing to instruct the jury on the clear and convincing burden of proof standard?**

[¶ 21] Jones invites this Court to reexamine the issue we decided in *Flockhart v. Wyant,* 467 N.W.2d 473 (S.D.1991), and require that the jury apply a clear and convincing standard of proof in determining punitive damage awards rather than the preponderance of the evidence standard. *See Kjerstad v. Ravellette Publications, Inc.,* 517 N.W.2d 419, 425 (S.D.1994) (trial court must find that plaintiff has established punitive damages are appropriate by a lower-order quantum of proof before the issue may go to the jury); *Vreugdenhil v. First Bank of S.D.,* 467 N.W.2d 756, 760 (S.D.1991).

[¶ 22] Jones argues the United States Supreme Court has adopted the clear and convincing standard subsequent to our decision in *Flockhart.* However, neither of the Supreme Court cases cited for this proposition by Jones supports this position. *Honda Motor Co. v. Oberg,* 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994), which we cited in *Schaffer I,* is a review of the constitutionality under the Fourteenth Amendment's Due Process Clause of an Oregon state constitutional amendment prohibiting judicial review of punitive damage awards. Likewise, *Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), is a review of the constitutionality under the Due Process Clause of a punitive damages award arising out of the application of Alabama common law. *See Hoff v. Bower,* 492 N.W.2d 912, 914 (S.D.1992) ("The *Haslip* Court was not mandating a 'new direction' for *all* state

courts in awarding punitive damages, but discussing the standards established by the Alabama Supreme Court ...." (emphasis original)). Neither case can be interpreted, as urged by Jones, to state that a clear and convincing standard of proof is required in determining punitive damages.[5] Having considered this issue recently in *Flockhart*,[6] we decline the invitation of Jones to do so again, finding the argument of Jones unpersuasive and the cited authorities not on point.[7] We therefore find no error in the trial court's instructing the jury that it could award punitive damages based on the preponderance of evidence standard.

**[¶ 23] 4. Did the trial court abuse its discretion in failing to order vacatur or remittitur of the punitive damages award?**

[¶ 24] Jones briefed this issue in two parts which we address separately.

*A.   Is a punitive damage award of $750,000 clearly excessive and the result of passion and prejudice on the part of the jury wherein Schaffer I, the jury awarded $25,000 in compensatory damages?*

Jones argues that the $750,000 punitive damage award is excessive in light of the fact that the prior jury awarded $25,000 in compensatory damages based on an original investment by Schaffer of $15,000.

■ [¶ 25] SDCL 21-3-2 describes the nature of the award to be "for the sake of example, and by way of punishing the defendant."[8] This has been our consistent approach in examination of these types of awards since *Richardson v. Huston,* 10 S.D. 484, 74 N.W. 234 (1898). Punitive damage awards extend not only to act as punishment for the individual defendant for past tortious acts and deter the defendant from repetition, *Bogue v. Gunderson,* 30 S.D. 1, 137 N.W. 595, 596 (1912), but also to serve notice to others who would be tempted to repeat such actions in the future, that they do so at their substantial peril. *Hulstein v. Meilman Food Industries,* 293 N.W.2d 889, 892 (S.D.1980). To accomplish these purposes, the punitive damages must be "relatively large." *Id.*

[¶ 26] We have consistently held that the determination whether to award punitive damages and the amount rests in large part with the jury.

> Great latitude is allowed in this class of cases. One purpose of exemplary damages is to deter the person against whom they are awarded from repeating the offense and others from committing it. An amount sufficient to serve this purpose in one instance might be wholly inadequate in

---

5.  *BMW v. Gore,* 517 U.S. ——, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), the Supreme Court's latest opinion on punitive damages, also provides no support for this argument of Jones.

6.  In *Flockhart,* we found no basis for the claim that punitive damages are to be determined under a clear and convincing standard of proof based on an extensive analysis of SDCL 21-1-4.1, the United States and South Dakota Due Process guarantees and public policy arguments. A historical analysis also supports our determination in *Flockhart* that the correct standard has always been, and continues to be, preponderance of the evidence.

Our punitive damage statute, SDCL 21-3-2, was enacted by the 1877 Dakota Territorial Legislature. Civ Code 1877 §§ 1946, 1974. It remains virtually intact to this day. There is nothing in our Constitution of 1889 or its reported debates (*see* Constitutional Debates, vol. II 1889) that even remotely suggests that our Due Process clause was intended to modify how punitive damages were to be judged by any burden of proof other than preponderance of the evidence which was the established norm for civil cases.

*Sanders v. Reister,* 1 Dak. 151, 46 N.W. 680, 685 (1875).
In *Richardson v. Huston,* 10 S.D. 484, 74 N.W. 234 (1898), and *Baxter v. Campbell,* 17 S.D. 475, 97 N.W. 386 (S.D.1903), discussion of proof of malice was treated no differently than the proof of the underlying tort. More specifically, in *Bogue v. Gunderson,* 30 S.D. 1, 137 N.W. 595, 596 (1912), the trial court instructed the jury that the elements of the punitive damage claim must be proved by a preponderance of the evidence. We found the trial court "performed its duty" and "correctly instructed as to the law applicable to the case."

7.  One of Jones' cited authorities, *Owens–Illinois v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992), erroneously lists South Dakota as one of the states having adopted the clear and convincing standard by statute, citing SDCL 21-1-4.1. *Id.* 601 A.2d at 656, n. 27. As stated above, we examined this issue in *Flockhart,* demonstrating that, under the plain language of the statute, this is not the standard in our state.

8.  *See* ¶ 17, *supra* for text of statute.

another. Each action must be governed by its own peculiar facts.... [A]ll circumstances—are to be considered. The question is not whether the trial court or this court, as triers of fact, would have awarded a less amount. Unless the verdict is so large as to clearly indicate that it must have been given under the influence of passion or prejudice, it should stand.

*Stene v. Hillgren*, 78 S.D. 1, 98 N.W.2d 156, 159 (1959) (quoting *Bogue*, 30 S.D. 1, 137 N.W. at 596). This obviously creates an extremely difficult burden for anyone attempting to overturn a jury verdict on the ground of excessive damages. *Wangen v. Knudson*, 428 N.W.2d 242, 245 (S.D.1988). However, where we have found the verdict not to be justified under our standard of review and rather based on passion or prejudice, we have reduced, or in the alternative if the reduction was not acceptable to the plaintiff, granted a new trial to the defendant.[9]

[¶ 27] Punitive damages must not be so oppressive or so large as to shock the sense of fair-minded persons. *Hulstein*, 293 N.W.2d at 892.[10] Cases in which punitive damages have been awarded are fact specific with an award in an individual case being considered unique to that case. *Id.* However, to guarantee uniformity of the law to guide the jury in its deliberations and the courts in reviewing a jury's verdict, we have adopted a five-factor test to determine whether a punitive award is appropriate or excessive. *Flockhart*, 467 N.W.2d at 479. Under this test, we consider (1) the amount allowed in compensatory damages, (2) the nature and enormity of the wrong, (3) the intent of the wrongdoer, (4) the wrongdoer's financial condition, and (5) all of the circumstances attendant to the wrongdoer's actions. *Id.*

[¶ 28] The first factor to be considered is the amount of compensatory damages and its relationship or ratio to the amount of punitive damages. The amount of punitive damages must bear a reasonable relationship to the compensatory damages. *Central, Inc. v. Morrow*, 489 N.W.2d 890, 896 (S.D.1992). Here, the jury awarded Schaffer $25,000 in compensatory damages. *Schaffer I*, 521 N.W.2d at 925. Jones argues that the punitive award of $750,000 is thirty times the amount of compensatory damages and fifty times the investment of Schaffer. Such ratio comparisons, however, are of limited value. Were there to be some bright-line rule on ratios as Jones implies, the remaining four criteria would become irrelevant and the entire process of judicial review would be reduced to that of a turn at a calculator. We have held "[t]here is no precise mathematical ratio between compensatory and punitive damages." *Wangen*, 428 N.W.2d at 246.[11]

---

9. In *Stene*, 78 S.D. 1, 98 N.W.2d 156, the jury awarded $50 compensatory damages for assault and battery and punitive damages of $750. Based on the facts of the case, we reduced the punitive award to $250. In *Hannahs v. Noah*, 83 S.D. 296, 158 N.W.2d 678 (1968), the jury awarded the plaintiff $1500 in compensatory damages and $2000 in punitive damages for tortious interference with a farm sale. We reduced the punitive damages award to $1000.

10. This judicial doctrine is in conformity with SDCL 21–1–3 which provides:
    Damages must in all cases be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages, contrary to substantial justice, no more than reasonable damages can be recovered.
    SDCL 21–1–3 was enacted as part of the 1877 Dakota Territorial Code, the same Code that adopted recognition of punitive damages in this jurisdiction.

11. Ratio arguments by defendants have had limited success. In *Browning–Ferris Industries v.*

*Kelco*, 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), the United States Supreme Court upheld a $51,146 compensatory verdict and a $6 million punitive damage verdict for a ratio of 117 to 1. In *Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1, the Supreme Court upheld an award of $840,000 in punitives where the compensatory damages to Haslip were only $200,000. In *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), the Supreme Court upheld a punitive verdict of $10 million where the compensatory award had only been $19,000 for a ratio of 526 to 1. In a stock churning case, *Davis v. Merrill Lynch*, 906 F.2d 1206 (8th Cir.1990), applying South Dakota punitive damage law, the Eighth Circuit Court of Appeals upheld a verdict of $2,000,000 in punitive damages where the compensatory damages were only $100,000, a 20 to 1 ratio. In *K & E Land and Cattle, Inc. v. Mayer*, 330 N.W.2d 529 (S.D.1983), we upheld a punitive damage verdict which had a 35 to 1 ratio to the compensatory damages. Recently, in *Hoff*, 492 N.W.2d 912, this Court affirmed an award of punitive damages for fraudulent misrepresenta-

Therefore, while this ratio is cause for concern, we must proceed to analyze the other applicable factors to set the ratio matter in perspective.

[¶ 29] The second factor to consider is the nature and enormity of the wrong committed. Jones argues that any wrongdoing is mitigated by the fact that on the totality of Schaffer's investments with Jones, Schaffer actually made money, and on the NRM investment, only lost $15,000.

[¶ 30] Jones sold approximately $160 million of NRM limited partnership interests and collected about $20 million in commissions and fees. *Schaffer I*, 521 N.W.2d at 924. Jones was the principal and primary brokerage firm selling NRM. To increase its profits even further, Jones, through an affiliated subsidiary, purchased a one-third ownership interest in NRM Corporation. Jones'

management knew early on, and prior to its sale to Schaffer, that NRM was in serious financial trouble.[12]

[¶ 31] Given the fact that Schaffer was an unsophisticated investor in limited partnerships and the other facts of this case, Jones owed Schaffer a duty of properly informing Schaffer of the risks Jones knew to be involved with this investment. Yet Jones violated its duty to its customers and sold them this security as a "conservative" investment.[13] It also failed to advise them there was no market for the resale of the partnership interest and thus it could not be re-sold if the customer desired. The result of this? When Jones investigated NRM's status, it later bailed itself out before the crash but did not tell any of its customers who got to go down with the ship. Those customers like Schaffer who became suspicious when finally

---

tion that was 27 times greater than the compensatory damage award.·

However, most recently in *BMW*, the Supreme Court struck down a punitive damage award of $2,000,000 against compensatory damages of only $4000 for a touched-up paint job on a new car. The Court found this 500 to 1 ratio "breathtaking" and that it "must surely 'raise a suspicious judicial eyebrow.'" 517 U.S. at ——, 116 S.Ct. at 1603, 134 L.Ed.2d at 831 (citing *TXO*, 509 U.S. at 481, 113 S.Ct. at 2732, 125 L.Ed.2d at 394 (O'Connor, J., dissenting)). However as it has done in the past, the Court refused to adopt a bright line test concerning ratio analysis:

> We have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award.... It is appropriate, therefore, to reiterate our rejection of a categorical approach. Once again, 'we return to what we said ... in *Haslip:* "We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case."'

—— U.S. at ——, 116 S.Ct. at 1602, 134 L.Ed.2d at 831. The Court made it clear that overturning a punitive verdict on ratio considerations would be the exception rather than the rule, as "[i]n most cases, the ratio will be within a constitutionally acceptable range, and remittitur will not be justified on this basis." 517 U.S. at ——, 116 S.Ct. at 1603, 134 L.Ed.2d at 831.

*See* footnote 9 *supra*, for South Dakota cases concerning reductions of punitive damage awards by this Court.

**12.** While this appeal was pending, the United States Supreme Court handed down its decision

in *BMW*. In *BMW*, the Supreme Court addressed the constitutionality of a punitive damages award which penalized a corporation's policy on a national scale. The *BMW* Court held:

> [B]y attempting to alter BMW's nationwide policy, Alabama would be infringing on the policy choices of other States. To avoid such encroachment, the economic penalties that a State such as Alabama inflicts on those who transgress its laws, whether the penalties take the form of legislatively authorized fines or judicially imposed punitive damages, must be supported by the State's interest in protecting its own consumers and its own economy.

—— U.S. at ——, 116 S.Ct. at 1597, 134 L.Ed.2d at 824–25. We adhere to this constitutional limitation. Nevertheless, the *BMW* Court made it clear it was addressing a state's authority to punish a defendant for conduct that was lawful in other states where it occurred. It concluded, "we need not consider whether one State may properly attempt to change the tortfeasors' *unlawful* conduct in another state." 517 U.S. at ——, n. 20, 116 S.Ct. at 1598, n. 20, 134 L.Ed.2d at 825, n. 20. (emphasis original).

In *Schaffer I*, we indicated that admission of Jones' income tax returns and net worth was solely for the purpose of assessing "Jones' complete financial makeup, including its income." 521 N.W.2d at 929. It was not allowed by us for the purpose of punishing Jones for conduct committed outside of South Dakota. In its briefing to the Court on this second appeal, Jones does not argue that these financial figures were improperly used in the second jury trial to attempt to punish it for sales made outside South Dakota.

**13.** The Jones broker in Aberdeen, South Dakota sold NRM to more than one hundred customers.

getting a prospectus after their purchase of NRM and did try to sell out, were told that their purchase was non-liquid and there was no re-sale market for their investment.

[¶ 32] The third factor to be considered is the intent of the wrongdoer. From intent, we determine "the degree of reprehensibility of the defendant's conduct," which is viewed as probably the most important indication of reasonableness of a punitive award. *BMW*, 517 U.S. at ——, 116 S.Ct. at 1599, 134 L.Ed.2d at 826. This factor reflects the principle that some wrongs are more blameworthy than others. Trickery and deceit are more reprehensible than negligence. 517 U.S. at ——, 116 S.Ct. at 1599, 134 L.Ed.2d at 826–27. Intentional malice can be the decisive element in a "close and difficult" case. 517 U.S. at ——, 116 S.Ct. at 1599, 134 L.Ed.2d at 827.[14]

[¶ 33] In *Schaffer I*, we stated "[i]t is clear the jury concluded that Jones' practices were less than exemplary in these transactions and ... Jones has not contested that finding." 521 N.W.2d at 928. Thus, we do not review whether Jones is a wrongdoer, but review the extent of its wrongful intent in engaging in this conduct.

[¶ 34] This is not a case of respondeat superior such as *Haslip* and *Davis* where management were unaware of the wrongdoing by a subordinate. Here, the opposite existed. Management was privy to the real status of NRM while it issued "blue sheets" to its brokers and representatives who, based on this "blue sheet," assured potential and existing customers that this was a sound investment. *Schaffer I*, 521 N.W.2d at 922–23. "The jury determined that Jones, as a principal, caused the loss not Edwards or Tebben, as agents." *Id.* at 928.

[¶ 35] The jury was presented evidence with which to find that the intent of Jones was to use its expertise to enrich itself through lucrative sales commissions and partial ownership in NRM by selling limited partnerships it knew were non-liquid and highly speculative to small investors who trusted Jones and were told it was a safe conservative investment. In *Schaffer I*, we held that "[t]he jury ... obviously concluded from the evidence that Jones caused injury to Plaintiffs 'through oppression, fraud, malice, willful and wanton misconduct or reckless disregard of Plaintiffs' rights.' " *Id.* at 926. Despite an instruction by the trial court in accordance with our prior holding, Jones attempted to argue to the jury that "we sold it at low risk and WE WOULD DO IT AGAIN based on those factors." (emphasis added).[15] Not surprisingly, in response, Schaffer argued to the jury:

Why are punitive damages necessary? You heard the testimony of the people at Edward D. Jones and every witness they brought here that said that they would do it all over again. . . . And they will, unless

14. In *BMW*, the Supreme Court determined that "none of the aggravating factors associated with particularly reprehensible conduct [was] present." 517 U.S. at ——, 116 S.Ct. at 1599, 134 L.Ed.2d at 827. Justice Breyer's concurring opinion specifically recognized that tricking the elderly out of their savings constitutes "the most serious [kind] of misrepresentation," which justifies substantial punitive damages while failing to disclose the repainting of a car by BMW is at the lesser end of the spectrum of conduct which justifies punitive damages. 517 U.S. at ——, 116 S.Ct. at 1606, 134 L.Ed.2d at 835. Herein, Schaffer is a retired farmer with an eighth grade education.

15. This was not a mere stray comment made in the heat of trial. Jones continues with this theme informing this Court in its appellate brief that:

Jones had in fact served the Plaintiff very well in his investments. . . . Although Defendant did not appeal the compensatory damage award of the first trial, Defendant did not concede that its conduct was in any manner fraudulent. . . . The evidence also established that Jones had Plaintiff's interest in mind when selling him the NRM investment and did so in the hopes that Plaintiff would make a profit. Indeed, the record is devoid of any evidence of malice on the part of the Defendant.

Jones acknowledged, in supplemental briefing discussing the effect of BMW on the present case, that the degree of reprehensibility was "the most important indicium of the reasonableness of a punitive award." (quoting *BMW*, 517 U.S. at ——, 116 S.Ct. at 1599, 134 L.Ed.2d at 826). Jones then argued:

The evidence at trial established that Jones carefully and thoroughly investigated the NRM investment before offering it to its investors and had the plaintiff's interests in mind when selling him the investment and in the hopes that he would make a profit.

somebody tells them ... no you're not going to do this to anybody else down the road.

This trial strategy by Jones allowed the jury to conclude Jones showed no remorse for its acts which had already been found to be fraudulent and that Jones intended to repeat the same conduct in the future. In *Hulstein*, we upheld a very substantial punitive award under the rationale that "this award should be a clear signal that companies caught practicing deliberate fraud will be severely punished. This is the nature of punitive damages." 293 N.W.2d at 892. Punitive damages may properly be imposed to further a State's legitimate interests in not only punishing unlawful conduct but also to deter its repetition. *BMW*, 517 U.S. at —, 116 S.Ct. at 1595, 134 L.Ed.2d at 822.[16]

[¶ 36] The fourth factor under consideration is the financial condition of the wrongdoer.[17] Traditionally, the defendant's net worth (assets minus liabilities) is the guideline for assessing the amount of punitive damages. *Schaffer I*, 521 N.W.2d at 929. We held a defendant's financial resources, which include net income as well as its net worth, to be the appropriate yardstick for determining punitive damages. *Id.*

[¶ 37] Schaffer claims that Jones' income for 1993 was $627,909,501. In 1991, its net income was $410,000,000. *Id.* The punitive damage award of $750,000 represents a minuscule amount of Jones' profit for 1993 or 1991. According to Schaffer, it represents less than what Jones would make in three hours on a working day in 1993.[18] Although we do not have Jones' net profit on its commissions from the sale of NRM, the fact that its gross profit amounted to $20 million hardly places this verdict in the confiscatory class.[19] The punitive damage award is not out of line with the ability of Jones to pay. *Hoff*, 492 N.W.2d at 915. It is difficult to imagine the conscience could be shocked by punitive damages that can be replaced with a few hours' work under these circumstances. *Cf. Davis*, 906 F.2d at 1225.

[¶ 38] The final factor is the consideration of all the other relevant circumstances of this case. An obvious consideration was one of the subjects of the first appeal, that being that Schaffer made money on every other investment with Jones other than this one. This profit amounted to $39,-

16. A significant factual difference between the case now before us and BMW is that in *BMW*, the automobile distributor's conduct in failing to disclose predelivery damage to new cars was treated with no uniformity among the 50 states. In fact, such conduct appears to be legal in approximately 25 states, 517 U.S. at —, 116 S.Ct. at 1594, 134 L.Ed.2d at 820, including South Dakota. 517 U.S. at —, n. 13, 116 S.Ct. at 1596, n. 13, 134 L.Ed.2d at 823, n. 13. Sixty percent of the repaired vehicles were sold legally under applicable state law. 517 U.S. at —, 116 S.Ct. at 1598, 134 L.Ed.2d at 825. In addition, BMW later voluntarily ceased the practice nationwide despite the fact its actions were legal in many jurisdictions. By contrast, we can find no state which would approve of Jones being found guilty of fraud which it did not appeal and then, rather than ceasing the fraudulent conduct, proclaiming "we would do it again."

17. We held in *Smith v. Weber*, 70 S.D. 232, 16 N.W.2d 537, 540 (1944), that the evidence of the financial condition of the plaintiff is not admissible, as the measure of punishment to be inflicted on the defendant is in part based on the defendant's wealth and has nothing to do with the wealth of the plaintiff.

18. Jones counters that the $627,909,501 figure cited by Schaffer was Jones' gross income not *its* net income. Jones claims its net income for 1993 to be only $69,000,000. At this rate it would take Jones 22.6 hours of net income to pay off the punitive award. *Schaffer I* found Jones' net income for 1991 to be $410,000,000. At this rate it would take Jones four hours' worth of net income to pay off the punitive award. Jones also fails to note that in *Schaffer I*, we held that punitive damages should be based in part not only on current net income but the defendant's "financial resources ... which include his net worth." 521 N.W.2d at 929. The $750,000 jury award represented less than one-half of one percent of the net worth of Jones at time of trial. *Compare with Hoff*, 492 N.W.2d at 915, where the award was two percent of the defendant's assets.

19. Although evidence of the financial results of a defendant's out-of-state conduct is not admissible to punish lawful conduct committed outside the state, such financial information is admissible to: "the determination of the degree of reprehensibility of the defendant's conduct." *BMW*, 517 U.S. at — n. 21, 116 S.Ct. at 1598, n. 21, 134 L.Ed.2d at 825, n. 21 (citing *TXO*, 509 U.S. at 462 n. 28, 113 S.Ct. at 2722 n. 28, 125 L.Ed.2d at 382 n. 28).

689.84. Per our reversal of this case in *Schaffer I*, the jury was fully informed about the totality of Schaffer's business dealings with Jones. This was in accord with our view that Jones be permitted to present any and all relevant mitigating circumstances to the jury. Still, after weighing all the evidence, the jury imposed $750,000 in punitive damages.

[¶ 39] According to *BMW*, consideration must also be given to other sanctions under South Dakota law for fraudulent misconduct. *BMW*, 517 U.S. at ——, 116 S.Ct. at 1603, 134 L.Ed.2d at 831. Although Jones has not been charged with criminal misconduct, we would note that those who engage in criminal fraud can be found to be in violation of SDCL 22–30A–3 [20] and 22–30A–17. This would be a Class 4 felony with a maximum punishment of ten years in the state penitentiary, a ten thousand dollar fine or both. *See* SDCL 22–6–1. Restitution could be awarded by the trial court but this is limited to pecuniary damages and specifically excludes punitive damages. *See* SDCL 23A–28–2(3).

[¶ 40] In regards to the sale of any security, it is a violation of SDCL 47–31A–101 to (1) employ any device, scheme or artifice to defraud, (2) make any untrue statement of material fact or to omit to state a material fact, or (3) engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person. Criminal penalties under this chapter are a Class 4 felony. SDCL 47–31A–409. Compensatory damages are available under SDCL 47–31A–410, as well as reasonable attorney's fees. Under SDCL 47–31A–410(j), the plaintiff is permitted to pursue any "other rights or remedies that may exist in law or in equity," thus allowing punitive damages as authorized by SDCL 21–3–2.

[¶ 41] Jones argues punitive damages should be considered synonymous with,

and thus limited to, treble damages which is the maximum allowed under SDCL Title 37 for restraint of trade and discriminatory trade practices, SDCL 22–34–2 for intentional damage to property, SDCL 21–3–6 for forcible exclusion from property and SDCL 37–5A–85 for failure to comply with franchise laws. The problem with this argument is that these statutes do not apply to the finding of fraud against Jones in *Schaffer I*.

[¶ 42] In *BMW*, we are instructed to consider whether less drastic remedies could achieve the goal of deterring future misconduct. 517 U.S. at ——, 116 S.Ct. at 1603, 134 L.Ed.2d at 832. In reviewing punitive damage awards in this state, we recognized "[t]he question is not whether the trial court or this court, as triers of fact, would have awarded a less amount" but whether the award is clearly the result of a jury's passion or prejudice. *Stene*, 78 S.D. 1, 98 N.W.2d at 159. In the first trial, Jones was assessed $500,000 in punitive damages on the basis of fraud. It did not appeal the fraud finding and yet told the jury in the second trial, "we sold it at low risk and WE WOULD DO IT AGAIN based on those factors." (emphasis added). Apparently $500,000 was not sufficient deterrence.

[¶ 43] When applying the facts of this case to the foregoing five factors, the award, while indeed generous, does not shock our collective conscience.

## B. Does the punitive damage award violate Jones' constitutional right to due process of law?

[¶ 44] Jones alleges that this award violates its constitutional right to due process of law. Due process is guaranteed both by the Fourteenth Amendment to the United States Constitution and Article VI, § 2 of the South Dakota Constitution. The burden of proof falls upon Jones to show that it was denied due process. *Davis*, 906 F.2d at 1226. Our statutes controlling punitive damages are presumed to pass a due process chal-

---

20.  SDCL 22–30A–3 provides in part:
    Any person who obtains property of another by deception is guilty of theft. A person deceives if with intent to defraud he:

    (3) Fails to correct a false impression which the deceiver previously created or rein-forced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship; ...

lenge until it appears clearly, palpably and plainly that they do not. *In re Certif. of Questions of Law,* 1996 SD 10 ¶58, 544 N.W.2d 183, 195 (citing *Simpson v. Tobin,* 367 N.W.2d 757, 765 (S.D.1985)). *See BMW,* 517 U.S. at ——, 116 S.Ct. at 1604, 134 L.Ed.2d at 833 (Breyer, J., concurring) (citing *TXO,* 509 U.S. at 457, 113 S.Ct. at 2720, 125 L.Ed.2d at 378).

[¶ 45] There is a two-fold due process protection granted Jones when facing the prospect of imposition of punitive damages. First, it is guaranteed procedural due process. *Honda Motor,* 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336.

[¶ 46] Jones is protected by SDCL 21-1-4.1 [21] which requires the trial court to determine both before discovery is allowed and before the matter goes to the jury, that the plaintiff has established a prima facie case that the defendant's conduct meets the requirements for imposition of punitive damages per SDCL 21-1-3. *Flockhart,* 467 N.W.2d at 477.

[¶ 47] "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also the severity of the penalty that a State may impose." *BMW,* 517 U.S. at ——, 116 S.Ct. at 1598, 134 L.Ed.2d at 826. Our statutes and interpretative case law have provided constitutionally sufficient notice. *See* footnotes 9 and 10, *supra.*

[¶ 48] Jones is also guaranteed, during the trial, the jury will be given sufficient guidance in its deliberations. In *Davis,* the Eighth Circuit upheld our punitive statute, determining it, by its terms, provided a limiting factor as to the specific instances where punitive damages could be awarded. 906 F.2d at 1227. The jury was further guided by the five-factor test which has been previously described. We agree with the *Davis* court that the punitive damages statutes that governed this trial met the procedural due

process requirements guaranteed Jones. Likewise, the procedural manner of this trial is in conformity with those statutes.

[¶ 49] Procedural due process requires such protections as the right to judicial review of a jury's verdict by the trial court and an appellate court. *Honda Motor,* 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336. Here, Jones has received both—twice.

[¶ 50] Jones is also entitled to substantive due process. Its property cannot be taken from it via punitive damages in excess of that which is "reasonably necessary to punish and deter." *Haslip,* 499 U.S. at 22, 111 S.Ct. at 1046, 113 L.Ed.2d at 23; *BMW,* 517 U.S. at ——, 116 S.Ct. at 1595, 134 L.Ed.2d at 822. Damages awarded in excess of that criteria amount to an "arbitrary deprivation of property." *Honda Motor,* 512 U.S. at ——, 114 S.Ct. at 2340, 129 L.Ed.2d at 349; *Schaffer I,* 521 N.W.2d at 927, n10. The due process clause of the Fourteenth Amendment prohibits a state from imposing a "grossly excessive" punishment on a tortfeasor. *BMW,* 517 U.S. at ——, 116 S.Ct. at 1592, 134 L.Ed.2d at 818 (citing *TXO,* 509 U.S. at 454, 113 S.Ct. at 2718, 125 L.Ed.2d at 377). In *Haslip,* the Court held that there cannot be a mathematical bright line in every case between what is constitutionally acceptable and what is constitutionally unacceptable. The correct rationale is that of reasonableness. *Haslip,* 499 U.S. at 18, 111 S.Ct. at 1043, 113 L.Ed.2d at 20. *See BMW,* 517 U.S. at ——, 116 S.Ct. at 1605, 134 L.Ed.2d at 834; *TXO,* 509 U.S. at 458, 113 S.Ct. at 2720, 125 L.Ed.2d at 379. Reasonableness is determined by an examination of the five factors that have been previously set forth when applied to the relevant facts of this case. *Davis,* 906 F.2d at 1227. The presence or absence of any one of these factors cannot alone justify or defeat the constitutionality of a punitive damage award. *Pulla v. Amoco Oil,* 72 F.3d 648, 659 (8th Cir.1995). A "shocking disparity" in the ratio between

---

**21.** SDCL 21-1-4.1 provides:
    In any claim alleging punitive or exemplary damages, before any discovery relating thereto may be commenced and before any such claim may be submitted to the finder of fact, the court shall find, after a hearing and based

upon *clear and convincing evidence, that there is a reasonable basis* to believe that there has been a willful, wanton or malicious conduct on the part of the party claimed against. (emphasis added).

an award of punitive damages and actual damages may initially suggest that the punitive damage award is unconstitutional. However, "the existence of potential damages and/or the reprehensibility of a defendant's conduct may overcome any such disparity." *Id.* at 659 (citing *TXO*, 509 U.S. at 462, 113 S.Ct. at 2722, 125 L.Ed.2d at 382).[22] Likewise, the net worth of the tortfeasor is also typically considered to determine constitutional reasonableness of the award. *TXO*, 509 U.S. at 462, n. 28, 113 S.Ct. at 2722, n. 28, 125 L.Ed.2d at 382, n. 28.

[¶ 51] With the possible exception of factor one in this case, which can be argued either way as to whether the punitive award is grossly disproportionate to the compensatory award,[23] all other factors fall firmly in favor of supporting the reasonableness of the award. Jones' conduct was fraudulent and intentional for the purpose of enriching itself at the expense of small investors who trusted Jones with their savings.[24] This award was based on actual events and did not focus on potential victims of similar hypothetical torts. *Pulla*, 72 F.3d at 659. As has been shown, this is not a case where the award will destroy or even seriously damage Jones.

> 'Punitive damages should bear a reasonable relationship to the harm *that is likely to occur from the defendant's conduct* as well as to the harm that actually has occurred. If the defendant's actions cause *or would likely cause* in a similar situation only slight harm, the damages should be relatively small. If the harm is grievous, the damages should be greater....' It is appropriate to consider the magnitude of the *potential harm*

that the defendant's conduct would have caused to its intended victim if the wrongful plan had succeeded, as well as the possible harm to other victims that might have resulted if similar future behavior were not deterred.... While petitioner stresses the shocking disparity between the punitive award and the compensatory award, that shock dissipates when one considers the potential loss to respondents.... In sum, we do not consider the dramatic disparity between the actual damages and the punitive award controlling in a case of this character.

*TXO*, 509 U.S. at 460–62, 113 S.Ct. at 2721–22, 125 L.Ed.2d at 380–82 (emphasis original) (quoting *Garnes*, 413 S.E.2d at 909).

[¶ 52] After the first jury verdict of $500,-000, Jones had the option of paying that amount, as it did with the compensatory award of $25,000, or appealing. It appealed and demanded a new trial on the punitive damage question. It got one. As was forecast by our first opinion in this case, the effect of a new trial on punitive damages awarded "by a jury could be the same, could be less, or could exceed the award in the prior trial." *Schaffer I*, 521 N.W.2d at 926, n. 8. Jones had options and chose what turned out to be the most financially costly. That is not the fault of the Constitution. *Davis*, 906 F.2d at 1228.

[¶ 53] *BMW*, the latest Supreme Court pronouncement of due process protection in the punitive damages arena, is distinguishable on its facts. "[T]he record in [*BMW*] discloses no deliberate false statements, acts of affirmative misconduct, or concealment of evidence of improper motive, such as were

---

**22.** In *TXO*, 509 U.S. at 459–60, 113 S.Ct. at 2721, 125 L.Ed.2d at 380, the Supreme Court offered the following example which aptly illustrates the concept:

> For instance, a man wildly fires a gun into a crowd. By sheer chance, no one is injured and the only damage is to a $10 pair of glasses. A jury reasonably could find only $10 in compensatory damages, but thousands of dollars in punitive damages to teach a duty of care. We would allow a jury to impose substantial punitive damages in order to discourage future bad acts.

*Id.* (quoting *Garnes v. Fleming Landfill, Inc.*, 186 W.Va. 656, 413 S.E.2d 897, 902 (1991)).

**23.** "Because no two cases are truly identical, meaningful comparisons of such awards are difficult to make." *TXO*, 509 U.S. at 457, 113 S.Ct. at 2720, 125 L.Ed.2d at 379.

**24.** [I]nfliction of economic injury, especially when done intentionally through affirmative acts of misconduct, or when the target is financially vulnerable can warrant a substantial penalty.... Our holdings that a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance.

*BMW*, 517 U.S. at ——, 116 S.Ct. at 1599–1600, 134 L.Ed.2d at 827.

present in *Haslip* and *TXO*." *BMW*, 517 U.S. at ——, 116 S.Ct. at 1601, 134 L.Ed.2d at 829. Under the circumstances attendant in the present case, we find the punitive award against Jones does not "jar one's constitutional sensibilities." *BMW*, 517 U.S. at —— n. 34, 116 S.Ct. at 1602, n. 34, 134 L.Ed.2d at 830, n. 34 (quoting *TXO*, 509 U.S. at 462, 113 S.Ct. at 2722, 125 L.Ed.2d at 382, and citing *Haslip*, 499 U.S. at 18, 111 S.Ct. at 1043, 113 L.Ed.2d at 20).

[¶ 54] We hold that Jones received both procedural and substantive due process. No one doubts that this state may protect its citizens by prohibiting deceptive trade practices. *BMW*, 517 U.S. at ——, 116 S.Ct. at 1595, 134 L.Ed.2d at 822. The damages were properly determined and within reason when based on all the circumstances of this case.

## CONCLUSION

[¶ 55] Clearly the result of this case is fact specific and significantly turns on the procedure involving the two trials. We do not suggest that in all cases of punitive damages, a 30 to 1 ratio is appropriate or that every person defrauded of $10,000 is entitled to $750,000 in punitive damages. Nevertheless, as to this case, we affirm on all issues.

[¶ 56] MILLER, C.J., and SABERS, AMUNDSON, and KONENKAMP, JJ., concur.

